Kerry Garland FRANKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–85–0672–CR.

Court of Appeals of Texas, Houston (1st Dist.).

June 19, 1986.

Allen C. Isbell, Houston, for appellant.

Michael J. Guarino, Galveston County Dist. Atty., Michael E. Clark, Galveston County Asst. Dist. Atty., Galveston, for appellee.

EVANS, C.J., and WARREN and JACK SMITH, JJ.

## OPINION

EVANS, Chief Justice.

The appellant was found guilty of murder and his punishment was assessed at 60 years confinement. We affirm.

In his first ground of error, the appellant contends that the conviction should be reversed "because the evidence is insufficient to negate the issue of 'sudden passion arising from an adequate cause,' an implied element of the offense of murder."

The deceased, stepfather of the appellant's girlfriend, Carrie Hargrove, died as a result of a beating and gunshot wounds inflicted upon him in his home. Appellant, who was 17 years old at the time, testified that he and a friend, Tommy Lee, beat the deceased with their hands and sticks, and shot him several times because they were trying to prevent him from raping Carrie. Realizing they had killed the deceased, the appellant and his friends attempted to cover up their participation in the killing by making it appear that the deceased's home had been burglarized. Appellant initially told the police that when he brought Carrie home, they found her stepfather dead and the house ransacked. Appellant later gave an oral statement to the police in which he admitted killing the deceased.

At trial, the State introduced edited portions of appellant's oral statement. When appellant was asked why he attacked the deceased, he responded, "I went off ... I just went crazy." He further stated that he had a difficult time remembering what had happened "because I was just so mad." He could not remember how many times he hit the deceased. He said, "I really didn't, you know, pay attention. I was just—an outburst of anger came out of me. That's what took over."

■ When there is evidence raising the issue of "sudden passion," its negation becomes an "implied element of murder." *Bradley v. State*, 688 S.W.2d 847, 851 (Tex. Crim.App.1985). The State is then required to disprove the issue beyond a reasonable doubt before a murder conviction can be obtained.

Without objection, the trial court charged the jury on the offense of voluntary manslaughter, instructing that if the State did not disprove the issue of sudden passion, the appellant must be acquitted of murder.

The appellant does not complain of the court's charge, nor does the appellant contend that the evidence is insufficient to support the submission of a charge of voluntary manslaughter. The appellant's argument is that the evidence supports *only* a conviction for voluntary manslaughter, not murder.

■ We conclude that a rational trier of fact could have found on the evidence presented that the State disproved "sudden passion" beyond a reasonable doubt.

On the night in question, the appellant and two male friends went to the deceased's house about 3:00 a.m., after making the rounds to several clubs. After hearing the appellant's girlfriend, Carrie, say that she was afraid her stepfather might try to do something to her, they decided to "teach his ass a lesson, beat his ass up, you know, real good." The appel-

lant had consumed three beers before taking Carrie home, and he admitted that he planned to "kick his (deceased) ass if he tried anything." After taking Carrie home, the appellant and one of his friends went into the deceased's garage. There they found two "sticks," one, a dowell closet rod about 3 feet long, and the other, a piece of 2 × 4 lumber. The two then waited in the laundry room, across from Carrie's bedroom. When the deceased heard Carrie come home, he entered her room and grabbed her as she took off her shirt. The appellant heard Carrie say, "Stop, leave me alone. No." The appellant and his friend then entered the room and beat the deceased for some 10 to 15 minutes. After the deceased fell unconscious into a closet, the two men shot him three times with a .357 magnum. The force of the men's blows was such that the "sticks were splintered," and the deceased had numerous and severe lacerations on his scalp, eyes, and face.

After the incident, the men broke the back door window and knocked about the furniture to make it appear there had been a burglary. They then drove to a nearby lake, where they discarded the bloody weapons, and returned to the house and called the police to report a burglary. After several days of investigation, the police determined that the stories were a fabrication, and Carrie gave a statement implicating the two men. The appellant thereafter gave two formal statements, one taped statement immediately after his arrest, and a second taped statement while he was in the county jail one week later.

The appellant testified that he loved Carrie and that he intended only to prevent the deceased from raping her. He offered testimony in his defense which tended to show that Carrie's mother was aware of her husband's sexual advances toward her daughter, and that the deceased had on previous occasions made sexual advances toward one of Carrie's friends. A friend of Carrie's testified that the deceased had once touched her genitals. She also testified that Carrie told her that appellant said he would kill the deceased if he ever touched Carrie. The appellant also testified that 5 or 6 years earlier, the deceased had tried to rape his sister, and that "When I went in there, that's all I could think about is him trying to do that to my sister and then trying to do it to Carrie."

It was for the jury to decide the credibility of the witnesses and the weight to be given their testimony. The jury chose to reject the appellant's version of the incident, concluding that the State met its burden of disproving the "sudden passion" issue beyond a reasonable doubt. We find the evidence sufficient to support the jury's determination of that issue, and we overrule the appellant's first ground of error.

■ In his second ground of error, the appellant contends that the trial court erred in overruling his objection to the admissibility of taped statements made while in custody, because the electronic recording fails to include the mandatory warnings required by Tex.Code Crim.P.Ann. art. 38.-22, sec. 3(a) (Vernon Supp.1986).

The first custodial interrogation of affiant commenced on August 6, 1984, at 11:53 a.m., and continued until 12:30 p.m. The police officers then interrupted the interrogation of appellant but continued their investigation, talking with other witnesses. Later that afternoon, the police returned to the jail and resumed their interrogation of the appellant, starting at 4:02 p.m. and ending at 4:23 p.m. The second interrogation was tape-recorded, but the police officers did not give the legal warnings. The tape recordings indicate that the interrogation was started with the following discussion:

Q. (By Mr. Harelson) Okay. It's 4:02 p.m. on August 6. We're back on the tape recorder. Myself, Joe W. Harelson, Texas Rangers.

Mr. Kennelly: My name is Clay Kennelly. I'm an investigator with the police department in Texas.

Mr. Franks: I'm Kerry Franks.

Q. Okay. Kerry, you know that the tape recorder is on again, don't you?

A. Yes, sir.

Q. Okay, and you don't have any objections to it being on?

A. Huh uh.

Q. And you remember earlier that I have advised you of your Constitutional Rights?

We hold that the second phase of the interrogation was merely a continuation of the interrogation process, and that under the circumstances presented, there was not such a "break" in the interrogation proceeding as to require the giving of new warnings. The appellant was properly admonished at the beginning of the interrogation, and at the time the second phase of the interrogation started, he acknowledged that he had been advised of his Miranda rights. We overrule the appellant's second ground of error.

We need not discuss the appellant's third and fourth grounds of error, which complain that the trial court failed to make written findings of fact in regard to the voluntary nature of the statements made during interrogation. During the pendency of the appeal, this cause was abated to the trial court, which made written findings that the statements were voluntarily made and that prior to the making of the statements, the appellant received proper warnings. These grounds of error are therefore moot.

The judgment of the trial court is affirmed.