Robert Sherrod **FLEMMING**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–95–01201–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 31, 1997.

Bruce L. Erratt, Bryan, for appellant.

Glynis McDaniel, Bryan, for appellee.

Before YATES, HUDSON and FOWLER, JJ.

## OPINION

HUDSON, Justice.

A jury convicted appellant, Robert Sherrod Fleming, of the offense of burglary of a habitation. They assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for life and a fine of $10,000.00. In two points of error, appellant contends: (1) the trial court erred in admitting his confession; and (2) he received ineffective assistance of counsel at trial. We affirm.

At approximately 2:00 a.m. on April 11, 1994, appellant entered the home of the complainant, a 67–year–old woman. The complainant lived alone, and was awakened when she heard a noise in the hallway outside her bedroom. The complainant could see the shadow of someone coming up the stairs. Thinking that it might be one of her grandchildren coming in, the complainant called out, "Who is it?" She received no reply.

Alarmed, the complainant got up to investigate. As she reached the doorway of her bedroom, she saw appellant holding a towel across the lower half of his face. The complainant began to scream. Appellant then put the towel over the victim's face, forced her down on the bed, and sexually assaulted her. Following the assault, appellant told the complainant to keep her eyes closed and not to tell anyone he had been there. The complainant later heard appellant going down the stairs.

The complainant lay on the bed for a time listening to hear if her assailant had departed. Hearing nothing, she ventured downstairs where she found a window unlocked and its screen removed. She then called her son who reported the attack to the police. A rape examination was performed shortly thereafter at a local hospital. On April 30, 1994, appellant consented to give specimens of his blood, saliva, and pubic hair. Donna Stanley, a serologist employed by the Texas Department of Public Safety testified that the appellant's DNA profile matched the sperm samples recovered from the victim.

Detective David Bigley arrested appellant on March 8, 1995. Bigley took him before a magistrate where he was given his *Miranda* warnings. Bigley then escorted appellant to the Bryan Police Station where he gave appellant his *Miranda* warnings a second time. Appellant waived his rights and agreed to give a statement. The statement given by appellant was in two segments recorded on two audiotapes. The first segment was recorded by a tape recorder sitting in plain view on a table in front of the appellant. During this statement, which lasted from 12:04 p.m. to 12:18 p.m., appellant admitted that he had entered the complainant's house. He denied, however, having sexual intercourse with the complainant. Detective Bigley testified that they concluded the interview, and he turned off the recorder. The detective continued, however, to speak with appellant for approximately five minutes.

During this conversation, appellant admitted that he had sex with the complainant after he entered her home. Appellant also said, however, that he did not want to make such an admission on tape. Bigley then left the room, activated a hidden recording device, and rejoined appellant in the interview room. On the second tape recording, appellant agreed to continue the questioning, and acknowledged that Bigley had advised him of his rights. His only reservation was that he did not want his statement to be recorded. Bigley continued the interview, and appellant stated that he had consensual intercourse with the victim. The second tape concluded at 12:52 p.m. Both audiotapes were admitted in evidence and played for the jury.

▆▆▆ In his first point of error, appellant contends the trial court erred in failing to suppress the second taped statement because it was involuntary and did not contain the warnings required by Article 38.22 of the Code of Criminal Procedure.[1] The determination of whether a confession is voluntary is based on an examination of all the circumstances surrounding its acquisition. *Griffin v. State*, 765 S.W.2d 422, 429 (Tex.Crim.App. 1989). The trial court's findings should not be disturbed absent an abuse of discretion. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex.Crim. App.1991). Here, appellant claims that Detective Bigley "secretly and deceitfully recorded the statement without the defendant's knowledge in violation of defendant's rights."

While there was formerly a requirement under Article 38.22, § 3(a)(3) of the Code of Criminal Procedure that a defendant be informed that his statement is being recorded, the legislature deleted this provision in 1989.[2] Noting this change in the statute, the court of criminal appeals has held that an officer's intentional concealment of a recording device to "trick" a suspect into making a recorded statement does not render the suspect's oral confession inadmissible. *Moore v. State*, 882 S.W.2d 844, 846 (Tex.Crim.App.1994), *cert.*

---

1. Appellant's first point of error contained an additional argument concerning the lack of written findings and conclusions with regard to the admissibility of his confession. This issue has been addressed in our previous order remanding this cause for entry of such findings.

2. *See* Act of May 28, 1989, 71st Leg., R.S., ch. 777, 1989 Tex. Gen. Laws 3406.

*denied,* 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995). The case before us, however, is not one where the police simply fail to tell the suspect that they are recording his statement. Here, Detective Bigley affirmatively disregarded appellant's specific request that the conversation not be recorded. It is clear from the record of their conversation that appellant would not have given a statement if he had known Bigley was surreptitiously recording it.

 Both the federal and Texas constitutions provide that a person may not be "compelled" to give testimony against himself. U.S. CONST. amend V; TEX. CONST. art. 1, § 10. Criminal defendants, therefore, are constitutionally protected only from *compulsory* self-incrimination. *United States v. Doerr,* 886 F.2d 944, 962 (7th Cir.1989). Police, therefore, may not exert physical or mental compulsion to obtain a statement. *Thomas v. State,* 723 S.W.2d 696, 704 (Tex. Crim.App.1986). Physical compulsion includes physical torture or extended deprivation of food and water. *Id.* Mental compulsion includes the more subtle force associated with offering a defendant two choices, *i.e.,* to give a statement or face an improper and unwarranted penalty, punishment, or detriment. *Id.* While a suspect may knowingly, voluntarily, and intelligently waive a constitutional right,[3] physical or mental compulsion may remove the element of voluntariness from a defendant's decision to incriminate himself. *Id.* The waiver, therefore, must be voluntary in the sense that it is the product of a free and deliberate choice rather than intimidation, coercion or deception. *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986).

 While Detective Bigley never promised appellant that he would not record their second interview, appellant was nevertheless *deceived* by the circumstances into believing that Bigley was making no recording. However, a confession induced by deception is admissible if the method used was not calculated to produce an untruthful confession and was not offensive to due process. *Frazier v. Cupp,* 394 U.S. 731, 740, 89 S.Ct. 1420, 1425,

22 L.Ed.2d 684 (1969); *Dotsey v. State,* 630 S.W.2d 343, 349 (Tex.App.—Austin 1982, no pet.). Some types of deception, therefore, are constitutionally permissible. *Green v. State,* 934 S.W.2d 92, 99 (Tex.Crim.App. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997). The focus is on whether the behavior of the State's law enforcement officials was such as to overbear the will of the accused and bring about a confession not freely determined by him. *Id.* at 99–100.

For example, where the police told a suspect that she would lose her welfare benefits and the custody of her children if she did not confess, the deception used by police was a form of mental compulsion designed to overcome her will. *See Lynumn v. Illinois,* 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922 (1963). Similarly, it was impermissible for a police officer, who was a close friend of the suspect, to falsely suggest that his future with the police department might be in jeopardy if the suspect did not cooperate and confess. *See Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). It was not improper, however, for interrogating officers to falsely tell the accused that the victim, on his deathbed, had identified him as the assailant. *Rodriquez v. State,* 934 S.W.2d 881, 890 (Tex.App.—Waco 1996, no pet.). Neither was it impermissible for police to falsely tell a suspect that his accomplice had given a complete confession. *Frazier,* 394 U.S. at 737–38, 89 S.Ct. at 1423–24.

Logic dictates that before facts or circumstances can compel a defendant to make an involuntary statement, he must know of them. While appellant would clearly not have made incriminating statements to Detective Bigley if he had known the conversation was being recorded, his *ignorance* of the concealed recording system could hardly have *compelled* him to confess. The deception employed by Detective Bigley was not coercive, nor could it have overborne appellant's will.

 We next address appellant's contention that the second audiotape did not contain the proper admonishments under Arti-

---

**3.** *Bryan v. State,* 837 S.W.2d 637, 643 (Tex.Crim. App.1992).

cle 38.22. In *Franks v. State*, 712 S.W.2d 858, 860–61 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd), the court considered a situation similar to the one now before us. There, police had given the accused the proper admonishments before conducting an initial interrogation. After the interview was concluded, the officers continued their investigation, and some three hours later, they renewed their interrogation of the suspect. The officers did not repeat the former admonishments, but the defendant acknowledged that they had previously advised him of his rights. *Id.* The court held that the second phase of the interrogation was merely a continuation of the interrogation process, and that there was not such a "break" in the proceedings as to require the giving of new warnings. *Id.* Similarly in this case, Bigley admonished appellant at the beginning of the interrogation, there was a short pause, and a second interrogation commenced after appellant acknowledged Bigley had advised him of his rights. Accordingly, we overrule appellant's first point of error.

In appellant's second point of error, he contends that he received ineffective assistance of counsel at trial. Our standard of review for ineffective assistance of counsel is the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This test requires appellant to show that: (1) counsel's representation fell below an objective standard for reasonableness; and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Absent a showing that both elements of this test have been met, we may not conclude appellant's conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Mooney v. State*, 817 S.W.2d 693, 697 (Tex.Crim.App.1991). We must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

In support of his argument, appellant cites four instances of deficiency in his counsel's performance: (1) the failure to object at trial to the admission of his confession; (2) the failure to procure a DNA expert to rebut the State's expert; (3) the failure to call any defense witnesses during the punishment phase of the trial; and (4) the failure to argue the case adequately at the close of the guilt/innocence phase.

As to counsel's failure to object to the admission of appellant's confession, in view of our disposition of that issue on the merits, we find that no ineffectiveness is shown. *See Lopez v. State*, 838 S.W.2d 758, 760 (Tex. App.—Corpus Christi 1992, no pet.) (holding that the failure to object to admissible evidence is not ineffective assistance).

■ With regard to the failure of counsel to call an expert to rebut the State's DNA witness, appellant directs us to the testimony of the State's witness wherein she incorrectly asserted that humans have 42 chromosomes. Appellant's counsel questioned the witness about her assertion, and the witness quickly admitted her misstatement, acknowledging that humans in fact have 46 chromosomes. Appellant claims that if counsel had called a rebuttal DNA expert, such expert could have pointed out other possible mistakes in the DNA tests. Appellant does not indicate what these mistakes were or what such testimony would have been. We do not believe that such after-the-fact speculation, standing alone, can support a claim of ineffectiveness.

■ Next, we consider counsel's failure to call any defense witnesses during the punishment phase of the trial. A reading of the record clearly shows that counsel intended to have appellant testify in his own behalf during the punishment hearing. After the State presented its punishment evidence, appellant was placed on the stand outside the presence of the jury to waive his Fifth Amendment privilege. Counsel confirmed that appellant understood he had the right not to testify and then asked if he still wanted to take the stand. Appellant replied, "I don't think I want to testify." The court, noting the surprised look on counsel's face, asked counsel if this was a new development; counsel acknowledged that it was. When counsel asked appellant when he had changed his mind, he answered, "Just now." Counsel

appears to have had a strategy for the punishment phase of the trial, and we will not deem him ineffective on account of his being surprised by his client's last-minute change of heart.

Finally, we consider appellant's contention that his counsel inadequately argued the case to the jury at the close of the guilt/innocence phase of the trial. He complains of the argument's brevity and of counsel's failure to suggest even once that he was not guilty. Closing argument is an area where trial strategy is most evident. *Thompson v. State*, 915 S.W.2d 897, 904 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). We will review matters of trial strategy only if an attorney's actions are without any plausible basis. *Id.* It is plausible that counsel, after reviewing the evidence presented, concluded that the best strategy might be to appear open and honest to the jury in hopes of mitigating punishment. By the time of closing argument, the jury had heard considerable evidence of appellant's guilt, not least of which was his own confession to the police. In light of these circumstances, an attempt to mitigate punishment could have been a very realistic strategy. *Id.* In fact, counsel gave a more extensive closing argument at the punishment phase in which he conceded the severity of appellant's crime, but attempted to focus the jury's attention on the his youth, immaturity, and remorse. Accordingly, we do not believe appellant has shown that his counsel was ineffective.

Appellant's second point of error is overruled. The judgment of the trial court is affirmed.