Affirmed and Memorandum Opinion filed May 18, 2006









Affirmed
and Memorandum Opinion filed May 18, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00901-CR

____________

 

IKE IDEHEN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 176th
District Court

Harris County, Texas

Trial Court Cause No. 1000880

 



 

M E M O R A N D U M   O P I N I O N

Appellant was convicted of aggravated
sexual assault of a child and sentenced to fifteen years=
imprisonment.  In two issues, appellant
complains that he received ineffective assistance of counsel and that the
evidence is factually insufficient to support his conviction.  We affirm. 


Factual and Procedural Background








Appellant lived
with his minor step-daughter N.W. and his wife Simone, who is N.W.=s mother, from
about 1993 until 1998, when he and Simone divorced.  In 2004, when N.W. was twenty years old, she
wrote Simone a letter stating that appellant had molested her when they were
living together.  Simone=s mother called
the police, and the State charged appellant with a single count of sexually
assaulting N.W. 

During the guilt-innocence phase of trial,
N.W. testified that she and appellant were home alone in 1996, shortly before
she began the sixth grade.  As she walked
out of the kitchen, appellant grabbed her and began touching her chest and
legs.  She asked him to stop, and he told
her to go to his and Simone=s bedroom.  When she failed to comply, he grabbed her
wrist and pulled her into the bedroom, where he removed her clothes and pushed
her onto the bed.  Appellant then removed
his clothes and climbed on top of N.W., pushed her legs apart, put on a condom,
and inserted his penis in her vagina. 
According to N.W., she told appellant it hurt and asked him to stop, but
he did not.  After he finished, he told
her Anot to tell and to
go take a shower.@ 
After that day, appellant sexually assaulted her in a similar manner
several more times.  The prosecutor asked
her for an approximation of how many times it happened, and she estimated  A[m]aybe several
times,@ A[l]ike every other
day,@ and a total of A[m]aybe six or
seven times.@  She testified that she did not tell Simone
about the sexual assaults because she was afraid Simone would not believe her,
and she did not tell her friends because she Athought they would
look at [her] differently.@  However, she promised herself she would tell
Simone when she turned twenty-one, and when she was twenty, she wrote Simone a
letter revealing the sexual abuse.  The
State also called Simone, who testified about receiving N.W.=s letter.  During cross-examination, appellant=s counsel
requested a copy of the letter and admitted it into evidence.  Dr. Judy Rambur, a clinical psychologist with
the Children=s Assessment Center, testified that it is
not uncommon for children to delay outcries of sexual abuse because of shame,
guilt, and fear.








Appellant testified that he never
inappropriately touched N.W.  He said
Simone and N.W. discovered he had remarried shortly before N.W. made her
allegation, which he claimed Awas just a lie to
get back at [him] because they were so upset with [him] having another wife.@  He also said he did not recall ever being
home alone with N.W.  The jury convicted
appellant.  Later, during the punishment
phase of trial, appellant confessed to and apologized for the sexual assault
and asked the jury to give him probation, stating as follows:

I just want to apologize to the jury.  I want you all to know that I=m really really
sorry about this, this situation, and I really want to make it up to them.  I=m really terribly
sorry, and it saddened me that I caused this to them, you know, so I really
want to make it up to them.  I=m just pleading to
you-all to give me a right chance to be able to plead to make it up to
them.  I=m ready to pay for
any counseling that she need [sic].  The
only way I can do [sic] is if you allow me to work . . . .

Appellant also testified he understood that as a
probationer, he would be required to participate in various programs and said
he was Awilling to do
anything they ask me to do.@ 

Analysis

A.  Ineffective Assistance of Counsel








In his first
issue, appellant claims he was denied effective assistance of counsel.  Specifically, he claims counsel was deficient
because counsel suggested appellant confess to the sexual assault during
punishment.  Ineffective assistance
claims are governed by the two-pronged test announced in Strickland v.
Washington, 466 U.S. 668 (1984).  To
prove ineffective assistance, appellant must show (1) that counsel=s representation
was deficient, falling below the standard of prevailing professional norms, and
(2) a reasonable probability that the result of the proceeding would have been
different but for trial counsel=s deficient
performance.  Id. at 687B96; Salinas v.
State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).  There is a strong presumption that counsel=s conduct fell
within the wide range of reasonable professional assistance.  Salinas, 163 S.W.3d at 740.  To defeat this presumption, A>any allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.=@  Thompson v. State, 9 S.W.3d 808, 814
(Tex. Crim. App. 1999) (quoting McFarland v. State, 928 S.W.2d 482, 500
(Tex. Crim. App. 1996)).  Without
specific explanations for counsel=s decisions, a
record on direct appeal will rarely contain sufficient information to evaluate
an ineffective assistance claim.  See
Bone v. State, 77 S.W.3d 828, 830, 833 (Tex. Crim. App. 2002); Thompson,
9 S.W.3d at 813B14. 
Further, without such explanation, we do not find deficient performance
unless the challenged conduct was A>so outrageous that
no competent attorney would have engaged in it.=@  See Goodspeed v. State, No.
PD-1882-03, __ S.W.3d __, 2005 WL 766996, at *2 (Tex. Crim. App. Apr. 6, 2005)
(quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001)).  An affidavit from trial counsel
becomes almost vital to the success of a claim for ineffective assistance of
counsel if there is no hearing or if counsel does not appear at the
hearing.  Stults v. State, 23
S.W.3d 198, 208B09 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d). 









Appellant claims it was Aobvious@ that he should
not have confessed during the punishment phase and that counsel=s suggestion that
he should do so constituted deficient performance.  However, appellant=s argument fails
for two reasons.  First, appellant filed
no affidavits or a motion for new trial, and nothing in the record
affirmatively demonstrates that he was following counsel=s advice when he
confessed during punishment.  See
Salinas, 163 S.W.3d at 740B41 (finding
assertions in brief that were unsupported by the record insufficient to prove
ineffective assistance); see also Goodspeed, 2005 WL 766996, at *2
(noting that Athe record must affirmatively demonstrate
the meritorious nature of the claim@ (quotation marks
omitted)).  Second, even assuming counsel
advised appellant to confess during punishment, appellant fails to show that
the suggestion was not based on reasonable trial strategy, such as seeking to
appear honest or remorseful with the jury. 
See Flemming v. State, 949 S.W.2d 876, 881 (Tex. App.BHouston [14th
Dist.] 1997, no pet.) (declining to find ineffective assistance when counsel
failed to suggest during closing that the defendant was not guilty because it
was Aplausible@ that counsel Aconcluded that the
best strategy might be to appear open and honest to the jury in hopes of
mitigating punishment@). 
Here, the jury had already found beyond a reasonable doubt that
appellant sexually assaulted N.W.; thus, a suggestion that appellant confessCconceivably to
mitigate punishmentCis not Aso outrageous that
no competent attorney would have engaged in it.@  Goodspeed, 2005 WL 766996, at *2.  Because we find appellant has failed to
satisfy the first Strickland prong, we overrule his first issue.

B. 
Factual Sufficiency of the Evidence

In his second issue, appellant claims the
evidence is factually insufficient to support his conviction.  In conducting a factual-sufficiency review of
the jury=s determination,
we do not view the evidence Ain the light most
favorable to the prosecution.@  Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997).  Instead, we view the
evidence in a neutral light and inquire whether the jury was rationally
justified in finding guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  We may find the
verdict factually insufficient in two ways. 
First, when considered by itself, the evidence supporting the verdict
may be too weak to support the finding of guilt beyond a reasonable doubt.  Id. 
Second, after weighing the evidence supporting the verdict, the contrary
evidence may be strong enough that the beyond-a-reasonable-doubt standard could
not have been met.  Id.  We must discuss the evidence appellant
claims is the most important in allegedly undermining the jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  However, we must
employ appropriate deference so that we do not substitute our judgment for that
of the fact-finder.  Zuniga, 144
S.W.3d at 482.  Our evaluation should not
intrude upon the fact-finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony.  Cain, 958 S.W.2d at 407.








We find the evidence is factually
sufficient to support appellant=s conviction.  N.W. described in detail how appellant
sexually assaulted her, and her testimony alone was sufficient to support
appellant=s conviction.  See Jensen v. State, 66 S.W.3d 528,
534 (Tex. App.BHouston [14th Dist.] 2002, pet. ref=d) (AThe testimony of a
victim[,] standing alone, even when the victim is a child, is sufficient to
support a conviction for sexual assault.@ (alteration in
original) (citation omitted)).  Further,
Dr. Rambur explained why child sexual assault victims sometimes delay making
outcries, and N.W.=s testimony and her letter to Simone,
which appellant admitted into evidence, explained why she waited to disclose
the sexual abuse.[1]


Appellant points out that there is no
medical evidence of sexual assault. 
However, the State was not required to produce such evidence.  See Mason v. State, 116 S.W.3d 248,
255 (Tex. App.BHouston [14th Dist.] 2003, pet. ref=d) (noting that
Texas law does not require medical evidence to prove sexual assault of a
child).  He further argues that N.W.=s testimony was
inconsistent and not credible, and thus the jury should not have believed
it.  He points to N.W.=s
cross-examination testimony, in which she testified as follows: 

Q. 
And you also said that it happened every other day; isn=t that right?

A. 
Yes, sir.

Q. 
But it was only six or seven times; is that right?

A.  Yes, sir.








(emphasis added). 
Appellant claims that, because N.W. said she lived with appellant for
about five years, the sexual abuse Awould have
consisted of more than every other day for approximately two weeks.@  However, N.W. never claimed he sexually
assaulted her the entire time they lived together.  Appellant also points out that N.W. wrote in
her letter to Simone, AI lost my virginity when I was 18[.]  I only did it once,@ and argues this
conflicts with her claim that he sexually assaulted her before then.  Considered in context, however, the jury
reasonably could have believed that N.W. was referring the loss of her Avirginity@ as consensual
sex.   Moreover, the jury is the sole
judge of the weight and credibility to be given to witnesses= testimony, and
some inaccuracies in a witness=s description do
not automatically render the evidence insufficient.  See Vazquez v. State, 67 S.W.3d 229,
236 (Tex. Crim. App. 2002);  Escovedo
v. State, 902 S.W.2d 109, 115 (Tex. App.CHouston [1st
Dist.] 1995, pet. ref=d). 
Thus, we conclude a rational jury could have found N.W.=s testimony
credible.  Having viewed the evidence in
a neutral light, we conclude it is not too weak, nor the contrary evidence too
strong, to support a finding of guilt beyond a reasonable doubt.  Accordingly, we overrule appellant=s second issue.

We affirm the trial court=s judgment.

 

 

/s/      Leslie Brock Yates

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed May 18, 2006.

Panel
consists of Chief Justice Hedges and Justices Yates and Guzman.

Do
Not Publish C Tex.
R. App. P. 47.2(b).

 











[1]  In her letter,
N.W. explained, AI thought if I said something you wouldn=t believe me and everyone would be mad at me.@