

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00150-CR

_____

GERALD DEWAYNE BUTLER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 36306-A

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Gerald DeWayne Butler was convicted of aggravated robbery in four separate prosecutions, for multiple robberies of different victims, occurring on three different dates. Those convictions are all presently before this Court on appeal. A fifth robbery involving a shooting was prosecuted earlier, and that conviction was appealed to this Court. (All five robberies occurred during the span of six weeks.) Our opinion affirming the conviction on the fifth robbery issued on November 12, 2009.[1] By agreement with the State and the trial judge, issues that were litigated in the first prosecution concerning a pretrial motion to suppress could also be brought forward as issues in his four current appeals.

In our earlier opinion (among other things), we addressed several issues attacking the court's ruling admitting evidence found in Butler's car after he was stopped by Longview police for a traffic violation. Butler claimed that the officer lacked probable cause to stop the car and thus evidence obtained as a result of the stop was inadmissible. We found that issue to be without merit and overruled the point of error.

Butler also raised a Fourth Amendment claim, arguing that the court erred in overruling his motion to suppress because the inventory search made of the car following his arrest was constitutionally unsupportable. We reviewed the record and concluded that this argument was not presented to the trial court and thus the issue was not preserved for our review.

---

[1]*Butler v. State*, 300 S.W.3d 474 (Tex. App.—Texarkana 2009, pet. ref'd, untimely filed).

2

Butler further argued, based on alleged *Brady*[2] violations of his right to exculpatory evidence, that the court should have suppressed his confession because FBI cover sheets attached to the two "Advice of Rights" were not provided to him, and those forms did not reflect that he was taken to be interviewed at the time stated in connection with the confession. We found that he had failed to show that they were not available to him and that the cover sheets were neither exculpatory nor material and thus no *Brady* violation occurred.

Butler further argued that his confession should have been suppressed on constitutional grounds, as further articulated by Article 38.22 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005). He argued violations because he was not advised he was being recorded and because he was interviewed at 2:00 a.m. We reviewed applicable law, and the facts as shown by the record, and concluded that coercive acts were not shown and that the trial court was within the range of its discretion in deciding to admit the second interview into evidence.

In this appeal, Butler was convicted in trial court number 36306-A on his plea of guilty to the offense of aggravated robbery pursuant to a plea agreement. The only issues raised on appeal address the traffic stop and the admission of evidence obtained as a result of that stop. We will therefore address only those matters relevant to those issues.

---

[2]*Brady v. Maryland*, 373 U.S. 83 (1963).

## I.    Evidence Obtained After Traffic Stop

Butler complains of the admission of physical evidence found in his car after he was stopped by Longview police for a traffic violation.   The trial court overruled Butler's motion to suppress.

Butler claims that the court erred in admitting the evidence because Watson lacked probable cause to stop the car Butler was driving on December 12, 2007.   Watson testified that on December 12, he had received a report of a white Chevrolet Caprice with grey doors having been used in a robbery of a convenience store that morning.   Watson saw a car matching the described vehicle and followed it.   He saw the driver of the car make a turn without signaling for 100 feet before the turn.   *See* TEX. TRANSP. CODE ANN. § 545.104 (Vernon 1999).   Watson then pulled the automobile over and discovered that Butler was driving it.   When Butler could produce neither a driver's license nor proof of insurance, he was arrested.   *See* TEX. TRANSP. CODE ANN. § 543.001 (Vernon 1999) ("Any peace officer may arrest without warrant a person found committing a violation of this subtitle."); *Garcia v. State*, 218 S.W.3d 756, 760 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (deputy authorized to arrest Garcia where deputy observed two traffic violations:   failure to display front license plate and failure to produce driver's license).   Since there was no licensed driver accompanying Butler to whom possession of the automobile could be delivered, it was impounded.   During an inventory search ancillary to the

4

impoundment, a pistol used in the shooting that was the subject of the first appeal was discovered in the trunk.

In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts so long as the record supports those findings. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Because the trial court is the exclusive finder of fact, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). Further, we give deference to the trial court's rulings on mixed questions of law and of fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. On the other hand, in circumstances where such rulings do not turn on an evaluation of credibility and demeanor, we review de novo the trial court's actions. *Id.*

Butler moved to suppress the evidence found in the vehicle, and other evidence later found in Butler's residence, arguing the officer lacked probable cause to conduct the traffic stop which initiated the automobile search—the results of which led to the search of the residence. At the hearing on his motion for new trial, Butler for the first time maintained that the lane from which he made a right turn was a right-turn-only lane; therefore, he posited, no turn signal was required. At the hearing on his motion for new trial, he argued that the area in question did not "qualif[y] as an intersection" as contemplated by the Texas Transportation Code. In his appellate brief, Butler argues that a driver is not obligated to signal a turn while in a turn-only lane. In support, he cites

5

broadly to Sections 541.304 (addressing traffic control), 545.101 (turning at an intersection), and 545.104 (use of turn signals when signaling a turn) of the Texas Transportation Code. Upon review of these statutes, we are unconvinced of Butler's conclusion and we issue no decision on whether a signal is required in a dedicated turn lane. In support of this argument, Butler cites *Trahan v. State*, 16 S.W.3d 146, 147 (Tex. App.—Beaumont 2000, no pet.). Trahan, like Butler, was stopped for failing to signal a lane change. However, Trahan was cited for failing to signal when he was exiting the freeway. The appellate court pointed out that there was no evidence in the record that Trahan turned or changed lanes in order to exit the freeway. According to the opinion, the arresting officer only testified that he stopped Trahan for failing to signal his exit from the freeway. The court of appeals rejected the State's proposition that such a movement necessarily involved a turn. Refusing to assume facts not in evidence, the Trahan court found the traffic stop unjustified. *Id.*

Here, we first note that we defer to the trial court's evaluation of the credibility of Butler's testimony that there was a sign indicating a turn-only lane. During the hearing on the motion for new trial, Butler's counsel asked him if there was "a designated right-turn lane." Butler responded that, "It was like a turnoff." Butler agreed with his attorney's questions, that "there were big arrows pointing this way to the right in that lane," and a sign reading "right lane right turn only." We have also reviewed the drawing done by Butler's counsel at the hearing on the motion for new trial; it suggests a lane that veers to the right for turning traffic. At the suppression

6

hearing, during trial, Watson said he stopped Butler for failing to signal his intent to turn for 100 feet before the turn, and Watson was not recalled for the hearing on the motion for new trial. Butler testified, though, that he did not signal to get into the alleged turn lane and he could not recall if he signaled his intent to turn once he had gotten into the supposed turn lane.

We express no opinion on Butler's reading of *Trahan* because we do not find its reasoning controlling here. The evidence that supports Butler's assertion that he was in a lane which excused his obligation to signal his turn is scant. Of greater relevance and importance is Watson's testimony that he saw what he believed to be a violation: failure to signal a turn for the requisite 100 feet before the turn is negotiated. If a peace officer has a reasonable basis for suspecting that a person has committed a traffic offense, he may legally initiate a traffic stop. *Green v. State*, 93 S.W.3d 541, 544 (Tex. App.—Texarkana 2002, pet. ref'd); *Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.). The United States Supreme Court has held that a traffic stop will be deemed valid as long as a reasonable officer in the same circumstances could have stopped the car for the suspected offense, even where there might have also been an ulterior motive in actually making the stop. *Whren v. United States*, 517 U.S. 806, 809 (1996).

The State is not required to prove that the individual actually committed a traffic violation, but only that the officer reasonably believed a violation was in progress. *Green*, 93 S.W.3d at 545; *Fisher*, 56 S.W.3d at 163. Therefore, "[i]n assessing whether the intrusion was reasonable,

7

an objective standard is utilized: would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997).

Counsel, having had the opportunity to review our reasoning in the prior opinion, has fine-tuned his argument in this appeal. He now argues that we should reconsider our ruling because *Trahan* and the other cases cited analyzed situations where the question of a "pretext" stop came into review. He suggests that those cases involve factual disputes about whether a particular action was taken—but which (if taken) was violative of a criminal statute. In those cases, he agrees, a court could find the requisite probable cause. In contrast, he argues that in this case, because the evidence showed that the action taken by Butler did not violate any Transportation Code requirements, the officer could not have had the requisite "probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810. He argues that it is simply not allowable or constitutional for a stop to be made for an action that is not an offense.

That understanding of the law finds support both in state and federal cases. As we previously pointed out, whether an officer has reasonable suspicion is evaluated from an objective perspective. *Id.* at 806; *United States v. Lopez-Valdez*, 178 F.3d 282, 288 (5th Cir. 1999); *Aviles v. State*, 23 S.W.3d 74, 77 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). In other words, looking at the facts available to the officer at the moment of the investigation, would a person of reasonable caution believe that a traffic violation occurred. *Goudeau v. State*, 209 S.W.3d 713,

8

716 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Aviles*, 23 S.W.3d at 77; *see Lopez-Valdez*, 178 F.3d at 288. An officer's suspicion of an alleged traffic violation, however, cannot be based on a mistaken understanding of traffic laws. *United States v. Granado*, 302 F.3d 421, 423 (5th Cir. 2002); *Goudeau v. State*, 209 S.W.3d at 716.[3] An officer's honest, but mistaken, understanding of the traffic law which prompted his stop is not an exception to the reasonable suspicion requirement. *Goudeau*, 209 S.W.3d at 716; *see United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998); *United States v. McDonald*, 453 F.3d 958 (7th Cir. 2006) (applying Illinois state law—a traffic stop based on an act that was not a traffic violation); *Lopez-Valdez*, 178 F.3d at 289; *Garza v. State*, 261 S.W.3d 361, 368 (Tex. App.—Austin 2008, pet. ref'd), *cert. denied*, 130 S.Ct. 123 (2009).[4]

In this instance, however, as we have previously pointed out, this argument was not presented to the trial court until a hearing on Butler's motion for new trial. An appellate court may not reverse a trial court's ruling on any theory or basis that might have been applicable to the case, but was not timely raised. *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002). The question is whether the complaint that the party is now making on appeal was timely brought to the trial court's attention. TEX. R. APP. P. 33.1; TEX. R. EVID. 103; *Martinez*, 91 S.W.3d at 336.

---

[3]*See Gaines v. State*, No. 04-00-00050-CR, 2001 WL 99630, at *4 (Tex. App.—San Antonio Feb. 7, 2001, pet. ref'd) (not designated for publication) (discussing proper application of this concept, not cited for precedential authority).
[4]*State v. Salazar*, No. 05-08-01511-CR, 2009 Tex. App. LEXIS 5802 (Tex. App.—Dallas July 29, 2009, no pet.) (mem. op., not designated for publication) (mistaken understanding of the law cannot provide justification for a traffic stop) (In an unpublished opinion, the Dallas court also addressed this issue. Citation not cited for precedential authority.).

In order to be timely, this argument would have had to be made prior to the introduction of the evidence at bar. In this case, it was not raised until the hearing on motion for new trial. Thus, this issue has not been preserved for our review.

We overrule the point of error.

## II.     Fourth Amendment Claim Not Preserved

Butler has also argued that our conclusion that the inventory search issue was waived was incorrect. The contention is based upon the Fourth Amendment guarantee of "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Butler claims the motion to suppress should have been granted because the search of his vehicle was a violation of his Fourth Amendment right to be protected against unreasonable searches. Specifically, Butler claims that when the police conducted an inventory of his automobile after he was arrested, such an inventory ran afoul of his Fourth Amendment protections. We held in our prior opinion that the constitutional claim was waived because Butler never argued to the trial court that the inventory was improper as a violation of his Fourth Amendment rights.

In order for a complaint to be presented on appeal, a timely request, objection, or motion must have been made to the trial court stating the grounds for the ruling "with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a)(1)(A). As we pointed out in our initial opinion, Butler's written motion to suppress and his arguments at the suppression

10

hearing and the hearing on his motion for new trial made no complaint about the inventory search of his car.

Butler now argues that we should reconsider that decision because he broached the matter in his motion for new trial. For the reasons stated above, we likewise conclude here that such a late request does not adequately present the issue to the trial court at a time during which he could take effectual action thereon, and thus does not preserve the issue for appellate review.

Butler also reiterates his contention that his pretrial "motion to suppress arrest and search" would preserve his present complaint for review. We disagree. It is a request to suppress that focuses solely upon a search of the vehicle pursuant to his arrest. So far as any specificity of argument can be gleaned, it is directed at the alleged failure of probable cause for the underlying arrest, thus tainting the search of the vehicle. Further, there is no attack on the admissibility of the evidence based on a claim that the inventory search or search following impoundment was unlawful, even by implication, in the trial of the case. We reiterate—a motion or complaint must be sufficiently specific to explain to the trial court what that complaint is. It is not clear from the motion, and was not otherwise presented to the trial court in a timely fashion.

Butler has not preserved this issue for appeal. *See* TEX. R. APP. P. 33.1. *Cf. Goudeau*, 209 S.W.3d at 721 (where appellant did not complain about inventory search of vehicle in suppression motion or hearing, but raised argument for the first time on appeal, issue not preserved). We overrule the point of error.

11

**III. No Error in Failing to Suppress Butler's Confession**

**A. Alleged *Brady* Violation**

Butler next contends that the trial court should have suppressed the confession (which he denies he made) he gave to law enforcement. Butler first claims that the State somehow violated Butler's right to exculpatory evidence as articulated in *Brady*. Butler did not file a motion to suppress, but rather a motion attacking the voluntariness of any admission or confession. The trial court conducted a pretrial hearing on this motion; at the end of the hearing, the trial court said that it would take the matter under advisement, watch the video interview, and listen to the audio recording, and then make a ruling. Butler also argued and presented evidence in support of this motion at the hearing on his motion for new trial.

Under *Brady*, to ensure the accused a fair trial, a prosecutor has an affirmative duty under the Due Process Clause of the Fourteenth Amendment to disclose to the accused all exculpatory or impeachment evidence, regardless of the good faith or bad faith of the prosecution, which is favorable to the defendant and is material to either guilt or punishment. *Id.* at 87. A due process violation occurs if (1) the prosecutor fails to disclose evidence that is (2) favorable to the defendant and (3) material. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); *Franks v. State*, 90 S.W.3d 771, 796 (Tex. App.—Fort Worth 2002, no pet.). Evidence is material if there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Under *Brady*,

12

the defendant bears the burden of showing that in light of all the evidence, it is reasonably probable the outcome of the trial would have been different had the prosecutor made a timely disclosure. *Id.* The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. *Id.*

Butler's argument that his rights under *Brady* were violated centers on exhibits he introduced at the hearing on the motion for new trial. Two exhibits were the two "Advice of Rights" forms introduced by the State at trial, one from each interview given by Butler. However, attached to each form that Butler introduced at the hearing on his motion for new trial is what amounts to an FBI cover sheet; each one summarizes the interview which followed the particular "Rights" form and lists information such as the date of investigation; "Date dictated"; and "Date of transcription" (it does not appear that any transcripts were produced at trial).

Butler also referenced testimony from Rodney Burns, Gregg County Jail Administrator, and records which document the movement of inmates within the jail. The heart of Butler's complaint is that these exhibits are inconsistent with the testimony of the law enforcement officers who conducted the two interviews with Butler. Butler claims that the forms which show an inmate being moved to different locations do not reflect that Butler was taken from a cell to be interviewed by Carruth and Davis at 2:00 a.m. December 13. However, the records also do not indicate Butler being taken out of a cell for the interview early in the afternoon of December 12,

13

the interview Butler admits giving. Further, Burns testified that the record being reviewed would normally not indicate when a prisoner was questioned by law enforcement. Burns said an "inmate transfer" form would be used to indicate a prisoner being transported for purposes of questioning, but Burns did not find such a form in Butler's file.

Next, Butler complains about inconsistencies in what we have called the FBI cover sheets attached to the two "Advice of Rights" forms. The form pertaining to the interview given the afternoon of December 12, the video recorded interview, says "[t]he details [of the interview] are provided in the audio recording." This is inconsistent with the fact that the interview was the subject of a video recording, argues Butler. Regarding the interview done about 2:00 a.m. December 13, Davis acknowledged he did not tell Butler he was recording the interview. However, the cover sheet for the "Advice of Rights" form pertaining to the second interview states, "The details of the robberies was consensually recorded by Detective Davis."

In our earlier opinion, we stated that we disagreed with Butler's claim that the cover sheets were exculpatory and material—stating that at most, they revealed some inconsistent record keeping. In this appeal, Butler takes the position that this is an inadequate explanation, because they were not disclosed, and "are 'material' as that term has been historically defined and used."

As in the prior appeal, Butler asserts that the forms were material to the voluntariness of his second statement. But voluntariness is a matter of law for the trial court to decide. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6. In making that determination, the trial court could compare the

14

voice on the two recordings; the court could evaluate the credibility of Carruth when he identified Butler as the individual he interviewed in the two sessions. Davis also identified Butler as the person he interviewed in the late-night session; Davis also said that he knew Butler over Davis's several years in law enforcement in Longview. These identifications were given before the trial court with Butler in the courtroom at the pretrial hearing. Carruth and Davis similarly identified Butler during trial. Butler does not suggest that the jail records and FBI cover sheets were not available to him before trial or that the State in any way withheld them. Further, we do not see that if Butler had this information and presented it to the jury, it would have made an acquittal more likely. *See Ex parte Mitchell*, 853 S.W.2d 1, 4 (Tex. Crim. App. 1993) (evidence favorable "if disclosed and used effectively . . . [it] may make the difference between conviction and acquittal").

Assuming, arguendo, that this evidence was withheld, Butler would then have been required to show that it was material; that is, "there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different." *Lagrone v. State*, 942 S.W.2d 602, 615 (Tex. Crim. App. 1997) (citation omitted). We have re-examined the issue, but find nothing to sway us from our prior conclusion—the evidence was not exculpatory as the term is understood under *Brady*—and was not improperly withheld. We also maintain our prior holding that the evidence was not shown to be material. No *Brady* violation occurred here.

15

## B.     No Constitutional Violation Shown

As a second reason urging that his confession should have been suppressed, Butler claims use of the recorded statement, where he was not advised he was being recorded, and officers interviewed him at 2:00 a.m., violated his constitutional rights.   We disagree.

As detailed above, Butler was arrested around midday December 12, 2007.   Early that afternoon, he was interviewed for at least two hours by Carruth and Lair.   In that interview, Butler first asserted that his only crime was driving without a driver's license; he then tells the officers he had let the robbers borrow his car.   Incidentally, throughout the afternoon interview, he speaks repeatedly of the automobile in terms of it belonging to him; only when he took the stand at trial did Butler claim that he had borrowed the car and that he had no access to the trunk.   Later in the afternoon of December 12, law enforcement officers went to a residence (the duplex next to and in the same building where Butler said he lived).   Although the officers found significant evidence tying the inhabitants of the duplex to several aggravated robberies (including the one for which Butler was on trial here), no evidence of extraneous offenses was admitted in this trial.   Carruth testified that after searching the duplex and interviewing other suspects, he and Davis went to the jail to speak with Butler again.   During that interview, the officers can be heard asking Butler if he had slept, and the officers offered him a piece of pie and a soda.   There is no indication the officers roused Butler in the middle of the night in an effort to disorient him.   This Court has been supplied the full unredacted interview and we hear nothing indicating coercive interview tactics or

16

anything suggesting that Butler gave his confession under compulsion. Rather, Butler can be heard sobbing during parts of his confession, but that is only after he initially continued to deny involvement. Later in the interview, Butler regains his composure as he details his participation in multiple robberies.

Butler acknowledges that the current statute controlling defendants' statements no longer requires a suspect be advised that a statement is being recorded. *Cf.* TEX. CODE CRIM. PROC. ANN. art. 38.22. As far as Butler's argument that notwithstanding the statement's compliance with Texas law, the circumstances of the statement still render it unconstitutional, a sister court has provided a thoughtful and detailed examination of how the current Article 38.22 satisfies constitutional muster. *See Flemming v. State*, 949 S.W.2d 876, 879 (Tex. App.—Houston [14th Dist.] 1997, no pet.):

> Both the federal and Texas constitutions provide that a person may not be "compelled" to give testimony against himself. Criminal defendants, therefore, are constitutionally protected only from compulsory self-incrimination. Police, therefore, may not exert physical or mental compulsion to obtain a statement. Physical compulsion includes physical torture or extended deprivation of food and water. Mental compulsion includes the more subtle force associated with offering a defendant two choices, i.e., to give a statement or face an improper and unwarranted penalty, punishment, or detriment. While a suspect may knowingly, voluntarily, and intelligently waive a constitutional right, physical or mental compulsion may remove the element of voluntariness from a defendant's decision to incriminate himself. The waiver, therefore, must be voluntary in the sense that it is the product of a free and deliberate choice rather than intimidation, coercion or deception.

*Id.* (citations omitted) (footnote omitted). In *Flemming*, the defendant admitted, in a recorded statement, that he had entered the complainant's home but denied sexually assaulting her. The interviewing detective turned off the tape recorder, but continued talking to Flemming. Flemming then admitted to the sexual assault, but said he did not want to have anyone make a recording of his admission. The detective activated a hidden recording device and Flemming again stated he had sex with the victim. *Id.* at 878. The court of appeals found that while the detective deceived Flemming, Flemming's ignorance of the recording "could hardly have compelled him to confess. The deception employed by Detective Bigley was not coercive, nor could it have overborne appellant's will." *Id.* at 879. We find nothing in the record to suggest that Butler was compelled to make the statements against his interest.[5] Error has not been shown.

As a final point, we note that a trial court's admission or exclusion of evidence is reviewed for an abuse of discretion. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006); *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex. Crim. App. 1990). We will not reverse a trial court whose ruling was within the "zone of reasonable disagreement." *Montgomery*, 810 S.W.2d at 391 (op. on reh'g). The trial court was able to review the two interviews alleged to

---

[5]In a thought-provoking series of arguments referencing authorities ranging from Plato's Republic and St. Augustine's *City of God*, to law review articles discussing the injustice of permitting police officers to deceive their subjects in interviews, counsel argues that it is, quite simply, wrong to allow officers of the law to lie to those in their custody. He argues that there can be "no sound, ethical, justification for the forces of right, law and the good employing the devices of subterfuge and lies—the devices and immoral ground of crime, the very realm which the law and the good oppose." *See* Miriam S. Gohara, *A Lie for a Lie: False Confessions and the Case for Reconsidering the Legality of Deceptive Interrogation Techniques*, 33 FORDHAM URB. L.J. 791 (Mar. 2006); Deborah Young, *Unnecessary Evil, Police Lying in Interrogations*, 28 CONN. L. REV. 425 (Winter 1996). We are unconvinced that this situation involves such activities, and in any event, we are bound under *stare decisis* to apply the analysis and policies previously articulated by the courts of this State.

have been given by Butler and compare the signatures on the two "Advice of Rights" forms.   We find no abuse of discretion in the admission of the second interview.

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:      July 6, 2010
Date Decided:        July 20, 2010

Do Not Publish