

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-08-00194-CR
_____

GERALD DEWAYNE BUTLER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 36,300-A

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Gerald DeWayne Butler, having been convicted by a jury of two counts of aggravated robbery, was assessed a penalty by that same jury of life imprisonment and a fine of $10,000.00 on each count. The trial court sentenced Butler in accord with the jury's recommendation (the sentences to run concurrently). We affirm the trial court's judgment.

I.      Robbery at Carlito's and Investigation

As Carlos Rodriguez, the owner of Carlito's Restaurant, was finishing up his closing duties sometime after 11:00 p.m. on November 21, 2007, trouble arose. Employee Juan Jimenez had just exited the restaurant's rear door, only to return almost immediately, calling to Rodriguez, "I think we're going to get in trouble." Two people in ski masks and gloves entered the open back door immediately after Jimenez. One carried a pistol, which Rodriguez described as having a long barrel and looking old. The armed bandit fired twice; one shot struck Jimenez in the midsection, and the other was fired into the ceiling. Jimenez fell to the ground and feigned death. The robber with the gun then ordered Rodriguez to open the safe. Rodriguez said he was not familiar with firearms and could not say what the caliber of the weapon was. Rodriguez complied and opened the safe. He was immediately shoved aside and the robbers took about $8,500.00 and a .357 magnum pistol from the safe. In addition to the contents of the safe, the robbers also took Rodriguez's briefcase, which contained his checkbook and credit cards, including Rodriguez's Exxon credit card, and left.

2

About three weeks after the robbery, on December 12, 2007, Officer Mark Watson saw an automobile which matched the description of one seen earlier that day at a robbery at a local convenience store. Watson followed the car and when he saw the automobile turn without first signaling, he initiated a traffic stop. Butler was driving the car and he had a passenger, Tarneshia Wheat. Butler could produce neither a driver's license nor proof of insurance. Butler was arrested for operating a vehicle without a driver's license. Because the passenger, Wheat, likewise could produce no driver's license, Watson would not release the vehicle to her, so the automobile was impounded. As a part of the impoundment procedure, the contents of the automobile were inventoried; during the inventory, Rodriguez's pistol (which had been taken from the safe during the robbery at Carlito's Restaurant) was discovered in the trunk of the automobile.[1]

After Butler's arrest and on the same day as the traffic arrest, although the reason which led officers to do so seem somewhat obscured, police had the occasion to go to 104-C Pinebrook Place in Longview. ATF agent Ken Keener said they went to that address "to follow up on some interviews." Present at that address were Butler's brother, Melvin, his cousin, Dexter Sparkman, and Wheat, who was the passenger in Butler's car when it was stopped for the traffic violation. Sparkman consented to a search of the duplex. Later, when Butler took the stand, he testified that he lived at 102-C Pinebrook, not at 104-C. However, there was testimony that 102-C and 104-C were the two sides of a duplex. Also, Butler acknowledged he sometimes stayed the night at 104-C.

_____

[1]We find the traffic stop was proper, and, therefore, the trial court did not err in suppressing evidence thereby obtained; please see our discussion of Butler's fourth and fifth points of error.

3

At 104-C, Dexter Sparkman gave the officers consent to search the duplex. In the duplex were found a hooded sweatshirt matching that worn by one of the Carlito's robbers, Rodriguez's Exxon credit card, and a .22 pistol matching the description given by Rodriguez of the pistol carried by the robbers during the robbery of Carlito's.

Within a few hours after Butler had been taken to jail after the traffic stop, Butler was interviewed at the jail by FBI Special Agent Cliff Carruth and Longview Police Detective Darin Lair. Although that interview was not presented as evidence to the jury, it will become relevant in our discussion of Butler's sixth point of error. The search of 104-C Pinebrook had consumed quite a long time and it was after midnight when officers returned to the jail. About 2:00 a.m., Agent Carruth and Detective Terry Davis conducted another interview of Butler. There was some indication that Butler had been asleep, but had nonetheless agreed to talk with the officers. Butler was advised of his rights and another interview was conducted, this time being preserved by a digital audio recorder which Davis had brought.[2] In this audio recording, Butler admitted robbing Carlito's with his brother, Melvin. Although Butler admitted that he had held the pistol which shot Jimenez, he maintained that the shooting was completely accidental.

## II.    Sufficiency of Evidence

Butler's first and third points of error challenge the legal and factual sufficiency of the evidence to support his convictions, respectively. His second point claims the evidence was legally

---

[2]We find Butler's second interview was properly admitted; see discussion below.

4

insufficient "under federal law"; we will review this claim in our analysis of the legal sufficiency under "state law" as Butler uses those terms.

In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007).

In this analysis, we use a hypothetically-correct jury charge to evaluate both the legal and factual sufficiency of the evidence. *Grotti v. State*, 273 S.W.3d 273 (Tex. Crim. App. 2008). Such a charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Villarreal v. State*, 286 S.W.3d 321 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

The State's indictment charged Butler with two counts of having committed aggravated robbery. In the first count, it was alleged that he had caused injury to Jimenez while committing

5

theft, while using or exhibiting a deadly weapon; the second count alleged that Butler had threatened Rodriguez or put him in fear of imminent bodily injury, in the course of committing theft, while exhibiting or using a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03 (Vernon 2003). We have summarized the evidence above. Butler admitted robbing the restaurant, wielding the pistol, and shooting Jimenez. Additionally, Rodriguez testified he was fearful for his life after having seen Jimenez shot. The evidence is legally and factually sufficient to support the jury's verdicts. Butler's confession and Rodriguez's testimony, together with the physical evidence (the pistol stolen from the restaurant being found in the automobile driven by Butler and Rodriguez's credit card taken from the restaurant, in addition to a sweatshirt and pistol very much like those worn or used at the robbery taken from Butler's home) could allow a rational jury to find the essential elements of aggravated robbery beyond a reasonable doubt. *See Johnson*, 23 S.W.3d at 7. Viewing the evidence in a neutral light, the evidence supporting the jury's verdict is strong; it is not so weak or outweighed by the great weight and preponderance of the evidence to render the jury's verdict clearly wrong or manifestly unjust. *See Lancon*, 253 S.W.3d at 705. We overrule Butler's first three points of error.[3]

## III.   Evidence Obtained After Traffic Stop

Butler's fourth and fifth points of error complain of the admission of physical evidence found in his car after he was stopped by Longview police for a traffic violation. The trial court overruled

---

[3]Butler makes no complaint about the jury charge in this case. After reviewing the charge given the jury and the statutory elements of aggravated robbery, we find the given charge substantially complies with the hypothetically-correct charge for this crime. *See Grotti*, 273 S.W.3d 273.

6

Butler's motion to suppress the evidence that Rodriguez's pistol was found in a car driven by Butler about three weeks after the Carlito's robbery.

In his fourth point of error, Butler claims that Watson lacked probable cause to stop the car Butler was driving December 12, 2007. As stated above, Watson testified that on December 12, he had received a report of a white Chevrolet Caprice with grey doors having been used in a robbery of a convenience store that morning. Watson saw a car matching the described vehicle and followed it. He saw the driver of the car make a turn without signaling for 100 feet before the turn. *See* TEX. TRANSP. CODE ANN. § 545.104 (Vernon 1999).[4] Watson then pulled the automobile over and discovered that Butler was driving it. When Butler could produce neither a driver's license nor proof of insurance, he was arrested. *See* TEX. TRANSP. CODE ANN. § 543.001 (Vernon 1999) ("Any peace officer may arrest without warrant a person found committing a violation of this subtitle."); *Garcia v. State*, 218 S.W.3d 756, 760 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (deputy authorized to arrest Garcia where deputy observed two traffic violations: failure to display front license plate and failure to produce driver's license). Since there was no licensed driver accompanying Butler to

---

[4]Section 545.104 of the Texas Transportation Code states:

(a) An operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position.

(b) An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.

TEX. TRANSP. CODE ANN. § 545.104.

whom possession of the automobile could be delivered, it was impounded. During an inventory search ancillary to the impoundment, Rodriguez's pistol was discovered in the trunk.

In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts so long as the record supports those findings. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Because the trial court is the exclusive finder of fact, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). Further, we give deference to the trial court's rulings on mixed questions of law and of fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. On the other hand, in circumstances where such rulings do not turn on an evaluation of credibility and demeanor, we review de novo the trial court's actions. *Id.*

Butler moved to suppress the evidence of the pistol and the fact that it had been found in his car, arguing the officer lacked probable cause to conduct the traffic stop.[5] At the hearing on his motion for new trial, Butler for the first time maintained that the lane from which he made a right turn was a right-turn-only lane; therefore, he posited, no turn signal was required. At the hearing on his motion for new trial, he argued that the area in question did not "qualif[y] as an intersection" as

---

[5]Butler urged his motion to suppress before Officer Watson testified to the jury. At that time in trial, Rodriguez had already testified and identified his .357 pistol, and the gun was admitted into evidence after Butler's counsel affirmatively said he had no objection to the gun's admission into evidence. However, we interpret Butler's appellate complaint to also claim error in Watson's being allowed to testify to the fact that the gun was found in Butler's possession, evidence which connects Butler to the robbery.

8

contemplated by the Texas Transportation Code.[6] In his appellate brief, Butler argues that a driver is not obligated to signal a turn while in a turn-only lane. In support, he cites broadly to Texas Transportation Code Sections 541.304 (addressing traffic control), 545.101 (turning at an intersection), and 545.104 (use of turn signals when signaling a turn). Upon review of these statutes, we are unconvinced of Butler's conclusion and we issue no decision on whether a signal is required in a dedicated turn lane. In support of this argument, Butler cites *Trahan v. State*, 16 S.W.3d 146, 147 (Tex. App.—Beaumont 2000, no pet.). Trahan, like Butler, was stopped for failing to signal a lane change. However, Trahan was cited for failing to signal when he was exiting the freeway. The appellate court pointed out that there was no evidence in the record that Trahan turned or changed lanes in order to exit the freeway. According to the opinion, the arresting officer only testified that he stopped Trahan for failing to signal his exit from the freeway. The court of appeals rejected the State's proposition that such a movement necessarily involved a turn. Refusing to assume facts not in evidence, the *Trahan* court found the traffic stop unjustified. *Id.*

Here, we first note that we defer to the trial court's evaluation of the credibility of Butler's testimony that there was a sign indicating a turn-only lane. During the hearing on the motion for new trial, Butler's counsel asked him if there was "a designated right-turn lane." Butler responded that, "It was like a turnoff." Butler agreed with his attorney's questions, that "there were big arrows

---

[6]"(a) In this subtitle, 'intersection' means the common area at the junction of two highways, other than the junction of an alley and a highway." TEX. TRANSP. CODE ANN. § 541.303 (Vernon 1999).

pointing this way to the right in that lane," and a sign reading "right lane right turn only." We have also reviewed the drawing done by Butler's counsel at the hearing on the motion for new trial; it suggests a lane that veers to the right for turning traffic. At the suppression hearing, during trial, Watson said he stopped Butler for failing to signal his intent to turn for 100 feet before the turn, and Watson was not recalled for the hearing on the motion for new trial. Butler testified, though, that he did not signal to get into the alleged turn lane and he could not recall if he signaled his intent to turn once he had gotten into the supposed turn lane.

We express no opinion on Butler's reading of *Trahan* because we do not find its reasoning controlling here. The evidence that supports Butler's assertion he was in a lane which excused his obligation to signal his turn is scant. Of greater relevance and importance is Watson's testimony that he saw what he believed to be a violation: failure to signal a turn for the requisite 100 feet before the turn is negotiated. If a peace officer has a reasonable basis for suspecting that a person has committed a traffic offense, he may legally initiate a traffic stop. *Green v. State*, 93 S.W.3d 541, 544 (Tex. App.—Texarkana 2002, pet. ref'd); *Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.). The United States Supreme Court has held that a traffic stop will be deemed valid as long as a reasonable officer in the same circumstances could have stopped the car for the suspected offense, even where there might have also been an ulterior motive in actually making the stop. *Whren v. United States*, 517 U.S. 806, 809 (1996). The State is not required to prove that the individual actually committed a traffic violation, but only that the officer reasonably

10

believed a violation was in progress. *Green*, 93 S.W.3d at 545; *Fisher*, 56 S.W.3d at 163. Therefore, "[i]n assessing whether the intrusion was reasonable, an objective standard is utilized: would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). We find the trial court did not abuse its discretion in denying Butler's motion to suppress; we overrule Butler's fourth point of error.

## IV.     Fourth Amendment Claim Not Preserved

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. In Butler's fifth point of error, he claims the motion to suppress should have been granted because the search of his vehicle was a violation of his Fourth Amendment right to be protected against unreasonable searches. Specifically, Butler claims that when the police conducted an inventory of his automobile after he was arrested, such an inventory ran afoul of his Fourth Amendment protections. However, Butler never argued to the trial court that the inventory was improper as a violation of his Fourth Amendment rights. In order for a complaint to be presented on appeal, a timely request, objection, or motion must have been made to the trial court stating the grounds for the ruling "with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a)(1)(A). Butler's written motion to suppress and his arguments at the suppression hearing and the hearing on his motion for new trial made no complaint about the inventory search of his car.

11

Therefore, Butler has forfeited this issue for appeal. *See* TEX. R. APP. P. 33.1; *Goudeau v. State*, 209 S.W.3d 713, 721–22 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (where appellant did not complain about inventory search of vehicle in suppression motion or hearing, but raised argument for the first time on appeal, issue not preserved). We overrule Butler's fifth point of error.

## V.     No Error in Failing to Suppress Butler's Confession

### A.     Alleged *Brady* Violation

Butler's sixth point of error complains that the trial court should have suppressed the confession he gave to law enforcement. Butler first claims that the State somehow violated Butler's right to exculpatory evidence as articulated in *Brady v. Maryland*.[7] Butler did not file a motion to suppress, but rather a motion attacking the voluntariness of any admission or confession. The trial court conducted a pretrial hearing on this motion; at the end of the hearing, the trial court said that it would take the matter under advisement, watch the video interview, and listen to the audio recording, and then make a ruling. Butler also argued and presented evidence in support of this motion at the hearing on his motion for new trial.

Under *Brady*, to ensure the accused a fair trial, a prosecutor has an affirmative duty under the Due Process Clause of the Fourteenth Amendment to disclose to the accused all exculpatory or impeachment evidence, regardless of the good faith or bad faith of the prosecution, which is favorable to the defendant and is material to either guilt or punishment. *Id.* at 87. A due process

---

[7]373 U.S. 83 (1963).

violation occurs if (1) the prosecutor fails to disclose evidence that is (2) favorable to the defendant and (3) material. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); *Franks v. State*, 90 S.W.3d 771, 796 (Tex. App.—Fort Worth 2002, no pet.). Evidence is material if there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Under *Brady*, the defendant bears the burden of showing that in light of all the evidence, it is reasonably probable the outcome of the trial would have been different had the prosecutor made a timely disclosure. *Id*. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. *Id*.

Butler's argument that his rights under *Brady* were violated centers on exhibits he introduced at the hearing on the motion for new trial. Two exhibits were the two "Advice of Rights" forms introduced by the State at trial, one from each interview given by Butler. However, attached to each form that Butler introduced at the hearing on his motion for new trial is what amounts to an FBI cover sheet; each one summarizes the interview which followed the particular "Rights" form and lists information such as the date of investigation; "Date dictated"; and "Date of transcription" (it does not appear that any transcripts were produced at trial).

Butler also referenced testimony from Rodney Burns, Gregg County Jail Administrator, and records which document the movement of inmates within the jail. The heart of Butler's complaint is that these exhibits are inconsistent with the testimony of the law enforcement officers who

13

conducted the two interviews with Butler. Butler claims that the forms which show an inmate being moved to different locations do not reflect that Butler was taken from a cell to be interviewed by Carruth and Davis at 2:00 a.m. December 13. However, the records also do not indicate Butler being taken out of a cell for the interview early in the afternoon of December 12, the interview Butler admits giving. Further, Burns testified that the record being reviewed would normally not indicate when a prisoner was questioned by law enforcement. Burns said an "inmate transfer" form would be used to indicate a prisoner being transported for purposes of questioning, but he did not find such a form in Butler's file.

Next, Butler complains about inconsistencies in what we have called the FBI cover sheets attached to the two "Advice of Rights" forms. The form pertaining to the interview given the afternoon of December 12, the video recorded interview, says "[t]he details [of the interview] are provided in the audio recording." This is inconsistent with the fact that the interview was the subject of a video recording, argues Butler. Regarding the interview done about 2:00 a.m. December 13, Davis acknowledged he did not tell Butler he was recording the interview.[8] However, the cover sheet for the "Advice of Rights" form pertaining to the second interview states, "The details of the robberies was consensually recorded by Detective Davis."

---

[8]It is not required that a suspect be informed that an interview is being recorded. *Moore v. State*, 882 S.W.2d 844, 846 (Tex. Crim. App. 1994); *Flemming v. State*, 949 S.W.2d 876, 878 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

We disagree with Butler's claim that the cover sheets were exculpatory and material. At most, they revealed some inconsistent record keeping. Butler asserts that the forms were material to the voluntariness of his second statement. But voluntariness is a matter of law for the trial court to decide. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 2005). In making that determination, the trial court could compare the voice on the two recordings; he could evaluate the credibility of Carruth when he identified Butler as the individual he interviewed in the two sessions. Davis also identified Butler as the person he interviewed in the late-night session; Davis also said that he knew Butler over Davis's several years in law enforcement in Longview. These identifications were given before the trial court with Butler in the courtroom at the pretrial hearing. Carruth and Davis similarly identified Butler during trial. Butler does not suggest that the jail records and FBI cover sheets were not available to him before trial or that the State in any way withheld them. Further, we do not see that if Butler had this information and presented it to the jury, it would have made an acquittal more likely. *See Ex parte Mitchell*, 853 S.W.2d 1, 4 (Tex. Crim. App. 1993) (evidence is favorable "if disclosed and used effectively . . . [it ] may make the difference between conviction and acquittal"). Nor has Butler demonstrated that this evidence was material. Assuming, arguendo, that this evidence was withheld, Butler must show it to have been material; that is, "there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different." *Lagrone v. State*, 942 S.W.2d 602, 615 (Tex. Crim. App. 1997) (citation omitted). No *Brady* violation occurred here.

15

**B.    No Constitutional Violation Shown**

As a second reason urging that his confession should have been suppressed, Butler claims use of the recorded statement,[9] where he was not advised he was being recorded, and officers interviewed him at 2:00 a.m., violated his constitutional rights.  We disagree.

As detailed above, Butler was arrested around midday December 12, 2007.  Early that afternoon, he was interviewed for at least two hours by Carruth and Lair.  In that interview, Butler first asserted that his only crime was driving without a driver's license; he then tells the officers he had let the robbers borrow his car.  Incidentally, throughout the afternoon interview, he speaks repeatedly of the automobile in terms of it belonging to him; only when he took the stand at trial did Butler claim that he had borrowed the car and that he had no access to the trunk.  Later in the afternoon of December 12, law officers went to a residence (the duplex next to and in the same building where Butler said he lived).  Although the officers found significant evidence tying the inhabitants of the duplex to several aggravated robberies (including the one for which Butler was on trial here), no evidence of extraneous offenses was admitted in this trial.  Carruth testified that after searching the duplex and interviewing other suspects, he and Davis went to the jail to speak with Butler again.  During that interview, the officers can be heard asking Butler if he had slept, and the officers offered him a piece of pie and a soda.  There is no indication the officers roused Butler in the middle of the night in an effort to disorient him.  This Court has been supplied the full unredacted

_____

[9]In arguing this subpoint of error, Butler continues to maintain his is not the voice on the second interview.

interview and we hear nothing indicating coercive interview tactics or anything suggesting that

Butler gave his confession under compulsion. Rather, Butler can be heard sobbing during parts of

his confession, but that is only after he initially continued to deny involvement. Later in the

interview, Butler regains his composure as he details his participation in multiple robberies.[10]

Butler acknowledges that the current statute controlling defendants' statements no longer

requires a suspect be advised that a statement is being recorded. *Cf.* TEX. CODE CRIM. PROC. ANN.

art. 38.22 (Vernon 2005). As far as Butler's argument that notwithstanding the statement's

compliance with Texas law, the circumstances of the statement still render it unconstitutional, a

sister court has provided a thoughtful and detailed examination of how the current Article 38.22

satisfies constitutional muster. *See Flemming*, 949 S.W.2d at 879:

> Both the federal and Texas constitutions provide that a person may not be
> "compelled" to give testimony against himself. . . . Criminal defendants, therefore,
> are constitutionally protected only from *compulsory* self-incrimination. Police,
> therefore, may not exert physical or mental compulsion to obtain a statement.
> Physical compulsion includes physical torture or extended deprivation of food and
> water. Mental compulsion includes the more subtle force associated with offering
> a defendant two choices, i.e., to give a statement or face an improper and
> unwarranted penalty, punishment, or detriment. While a suspect may knowingly,
> voluntarily, and intelligently waive a constitutional right, physical or mental
> compulsion may remove the element of voluntariness from a defendant's decision to
> incriminate himself. The waiver, therefore, must be voluntary in the sense that it is
> the product of a free and deliberate choice rather than intimidation, coercion or
> deception.

---

[10]Again, no extraneous offenses were introduced before the jury; we mention these only to demonstrate what evidence the trial court had before it in evaluating whether it was in fact Butler giving the statement, and whether it was voluntary.

17

*Flemming*, 949 S.W.2d at 879 (citations omitted) (footnote omitted).  In *Flemming*, the defendant admitted, in a recorded statement, that he had entered the complainant's home but denied sexually assaulting her.  The interviewing detective turned off the tape recorder, but continued talking to Flemming.  Flemming then admitted to the sexual assault, but said he did not want to have anyone make a recording of his admission.  The detective activated a hidden recording device and Flemming again stated he had sex with the victim.  *Id.* at 878.  The court of appeals found that while the detective deceived Flemming, Flemming's ignorance of the recording "could hardly have *compelled* him to confess.  The deception employed by Detective Bigley was not coercive, nor could it have overborne appellant's will."  *Id.* at 879.  We find nothing in the record to suggest that Butler was compelled to make the statements against his interest.[11]

As a final point, we note that a trial court's admission or exclusion of evidence is reviewed for an abuse of discretion.  *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006); *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex. Crim. App. 1990).  We will not reverse a trial court whose ruling was within the "zone of reasonable disagreement."  *Montgomery*, 810 S.W.2d at 391 (op. on reh'g).  The trial court was able to review the two interviews alleged to have been given by Butler and compare the signatures on the two "Advice of Rights" forms.  We find no abuse of discretion in the admission of the second interview.

---

[11]*Cf. Henderson v. State*, 13 S.W.3d 107, 110  (Tex. App.—Texarkana 2000, no pet.) (State called defendant, who waived counsel, to stand in State's case-in-chief; trial court's admonishments incorrect and amounted to compulsion to testify).

18

## VI.    Motion for Counsel to Withdraw

Butler complains next that the trial court erred by not granting a motion filed by his trial attorney seeking to allow the attorney to withdraw from representing Butler. A hearing on the motion to withdraw was held June 30, 2008. Trial commenced August 25, 2008. At the hearing on the motion to withdraw, Butler's attorney said he had been appointed about December of 2007, had obtained and reviewed numerous exhibits such as at least one of the recorded interviews with Butler and other recorded statements given by Butler's co-defendants, and had just viewed a copy of the surveillance video showing the Carlito's robbery. Contrary to Butler's assertion that the attorney had not provided Butler with discovery materials, counsel told the trial court that he had furnished Butler with all discovery obtained to that point. Butler told the trial court that he did not feel counsel was acting in Butler's "best interest" and had not met with Butler to discuss witnesses, alibis, whether to go to trial before a jury or whether to submit to a trial before the bench. Counsel also told the trial court that Butler wanted the attorney to file a motion to dismiss the indictment even though there was no basis for such a filing because "the indictment[] track[s] the statute."

The trial court's decision to deny the motion to withdraw is reviewed for abuse of discretion. *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). An indigent defendant's right to counsel does not require the trial court to appoint a counsel agreeable to the accused. *Id*. In general, personality conflicts and disagreements concerning trial strategy do not form valid grounds for withdrawal. *Id*. Unless a defendant shows adequate grounds for the appointment of new counsel

19

or chooses to waive his right to counsel and to proceed pro se, he must accept the counsel appointed by the trial court. *Garner v. State*, 864 S.W.2d 92, 98 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd).

In his appellate point, Butler complains "the trial judge gave few, if any, reasons for denying the motion to withdraw." However, a defendant must bring the matter to the trial court's attention and must carry the burden of proving he is entitled to new counsel. *Stephenson v. State*, 255 S.W.3d 652, 655 n.4 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing *Malcom v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. [Panel Op.] 1982); *Webb v. State*, 533 S.W.2d 780, 784 n.3 (Tex. Crim. App. 1976)). Based on the minimal complaints Butler presented to the trial court, we find the trial court did not abuse its discretion in denying Butler's motion. The seventh point of error is overruled.[12]

## VII.   No Error in Alleged Hearsay

In his eighth point of error, Butler complains that the trial court erred in allowing hearsay testimony by the State's witnesses. Butler complains of three statements made by law enforcement witnesses, which the trial court allowed over Butler's objections.

---

[12]Trial counsel made brief mention, at the hearing on the motion to withdraw, that Butler "contacted the Bar Association." Butler did not mention or expand on this when he addressed the trial court, so there is nothing in the record to suggest a legitimate conflict of interest, which can in some circumstances entitle an accused to a new counsel. *See, e.g.*, *Smith v. Lockhart*, 923 F.2d 1314, 1321 (8th Cir. 1991) (conflict of interest arising from defendant's class action suit against class including attorney, coupled with inability to communicate with each other); *United States v. Hurt*, 543 F.2d 162 (D.C. Cir. 1976) (appellate counsel's conflict of interest arising out of libel suit brought against him by appellant's trial counsel for asserting, on appeal, ineffectiveness of trial counsel).

The first statement of which Butler complains came from Lair; the State asked Lair if it was Lair's "understanding that Gerald Dewayne Butler at least stayed" at 104-C Pinebrook Place, the duplex where incriminating evidence was found. However, when Butler took the stand, he testified that he lived at 102-C Pinebrook, but occasionally stayed the night at 104-C. Without deciding whether it was error to allow Lair's testimony about his "understanding" of where Butler resided or stayed, we point out that a party waives error regarding improperly admitted evidence if the same evidence is later admitted without objection. *See Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993); *House v. State*, 909 S.W.2d 214, 216 (Tex. App.—Houston [14th Dist.] 1995) (stating any error in allowing inadmissible evidence is cured when same evidence comes in without objection elsewhere in trial), *aff'd*, 947 S.W.2d 251 (Tex. Crim. App. 1997).

Butler also complains that the State was allowed to cross-examine him with the question, "Well, if Ms. [Tarneshia] Wheat told Special Agent Keener that you lived there [104-C] . . . that you sometimes stayed in that bedroom where the .22 gun was found, would she be a liar?" Arguably, this assertion by the State assumes facts not in evidence: Wheat did not testify at trial. Further, the suggestion of what Wheat said goes to why the investigating officer went to search for evidence at 104-C. Also, the prosecutor's question was not evidence. Even if this were inadmissible hearsay, Butler's concession that he lived next door and occasionally stayed in the 104-C location waived any complaint.

We reach a similar conclusion regarding Butler's complaint that the State was allowed to ask Butler, "why would [Butler's brother] tell the police that he participated in the Carlos -- Carlito's restaurant aggravated robbery and that you were in it, also?" The State's question was improper: it assumed facts not in evidence. But the State was not offering testimony, and, therefore, the question did not amount to hearsay. We overrule Butler's eighth point of error.

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     September 30, 2009
Date Decided:      November 12, 2009

Publish