

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00589-CR

The **STATE** of Texas,
Appellant

v.

Robert Weldon **ELLIS**,
Appellee

From the County Court at Law, Kerr County, Texas
Trial Court No. CR120076
Honorable Spencer W. Brown, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
    Marialyn Barnard, Justice
    Luz Elena D. Chapa, Justice

Delivered and Filed:  March 13, 2013

REVERSED AND REMANDED

The State appeals the trial court's order granting Robert Weldon Ellis's motion to suppress.  Because a reasonable officer in the same circumstances could have reasonably believed that a traffic offense had occurred, we reverse the trial court's order and remand the cause to the trial court for further proceedings.

## FACTUAL BACKGROUND

Officer Grace Galvan[1] was the only witness who testified at the suppression hearing.  At approximately 2:00 a.m. on December 26, 2011, Officer Galvan observed a vehicle stopped at an intersection in the left turn lane.  Officer Galvan stated that the vehicle did not have its turn signal activated, and the left turn signal was green.  Officer Galvan observed a pedestrian standing beside the driver's side of the vehicle, and the pedestrian and the driver appeared to be engaged in a conversation.  Ellis was subsequently identified as the driver of the vehicle.

As Officer Galvan approached behind Ellis's vehicle, the pedestrian returned to the sidewalk.  Rather than turning left, Officer Galvan testified that Ellis moved toward the main lane, into the intersection, and turned right.  Officer Galvan testified that Ellis did not activate a turn signal.  Officer Galvan stated that no other vehicles were on the street.  Officer Galvan testified that the vehicle's engine was revved during the turn, causing the vehicle to fishtail.  Officer Galvan testified that Ellis violated a city ordinance by making an unsafe start; however, she admitted that without a copy of the ordinance she was unable to further explain the violation.

The incident was recorded on video, and the video was played for the trial court.  The video confirmed Ellis's failure to activate a turn signal.  The video also recorded Officer Galvan informing Ellis that he was stopped because he made an improper lane change and then an unsafe start causing his vehicle to fishtail.

Defense counsel argued that Ellis was not required to signal a lane change or a turn because no other vehicles were around, and a signal is not required if the lane change or turn can be made safely.  Defense counsel further argued that Officer Galvan could not explain the ordinance, and it was unclear how the ordinance was to be applied.

---

[1] Although Officer Galvan was no longer a peace officer at the time of the hearing, we will refer to her as Officer Galvan in this opinion.

The State argued that the evidence established multiple traffic offenses in violation of the Texas Transportation Code, including: (1) being stopped at a green light in the middle of the roadway conversing with a pedestrian; (2) not being as close as practicable to the right-hand curve or edge of the roadway before making a right-hand turn; and (3) not using a signal to indicate Ellis's intention to change lanes or to turn. The State further noted that the ordinance referred to by Officer Galvan prohibits a person from starting a vehicle in such a manner as to cause the wheels to spin or slide, except when necessary to prevent colliding with another vehicle. The State also noted that the trial court was required to apply an objective standard in determining if reasonable suspicion existed to support the traffic stop.

After taking the motion under advisement, the trial court denied the motion and issued findings of fact and conclusions of law. The following are the pertinent findings and conclusions:

## I.

## FINDINGS OF FACT

5. Galvan testified that she identified a green Dodge Challenger that made a turn in violation of City Ordinance 102-111.

6. When defense counsel asked Galvan what the ordinance said was illegal and how the Dodge Challenger violated it, she stated that she did not know what the ordinance provided.

8. The prosecutor admitted and published a video of the events surrounding the stop of the defendant.

9. The video displayed what later was determined to be the defendant's car stopped in the road at an intersection with a person standing next to the driver's side of the vehicle approximately two blocks away.

10. There were no other vehicles on the road except those of Galvan and the defendant, and there was no cross traffic.

11. Galvan sped up considerably to engage the defendant at that location.

12.    As Galvan approached the defendant's vehicle at a high rate of speed, the defendant moved his car to the right safely in a way that would enable Galvan to pass him in that lane.

13.    The defendant then turned right at the intersection, and Galvan changed lanes to follow him and stopped him after the turn.

14.    It was apparent from the video that Galvan was in the process of stopping the defendant based upon her initial pursuit.

15.    It was apparent from the video and the testimony that the defendant caused no danger to Galvan or any other drivers or pedestrians in his attempt to move out of Galvan's way.

16.    Galvan turned on her "take-down" lights as the defendant was turning.

17.    It appeared to the court that the stop of the defendant began at the initial point of pursuit when the officer sped up to approach the defendant's vehicle.

18.    The officer's inability to describe the ordinance or how the defendant had violated the ordinance rendered her testimony incredible that the ordinance violation was the reason for the stop.

19.    This court finds that the video is more credible than the officer's testimony concerning the reason for the stop.

II.

CONCLUSIONS OF LAW

2.    The officer's actions on the video do not support the officer's testimony in court because those actions on video show a different sequence of events than those described by the officer in her testimony.  In fact, the officer could not state why or by what authority she stopped the defendant.  Therefore, the court concludes that it may believe the video account of the facts rather than the officer's account of the facts. Carmouche v. State, 10 S.W.3d 323, 331-332 (Tex. Crim. App. 2000).  The video demonstrates a stop that is without any reasonable suspicion.

5.    The Assistant County Attorney, Joe Soane, did not make the stop.  Grace Galvan made the stop.  Her reasonable suspicion to stop the defendant is what counts.  Grace Galvan said, "I don't have the ordinance with me, so I couldn't tell you how the violation — the actual violation, other than it was [an] unsafe start."

6.    It is the court's opinion that Officer Galvan was going to stop the defendant when she was one block away.  Look at the film.  See the transcript, page 18, lines 9-16:

The Court: "I noticed in — you were going down Water Street there."

The Witness: "Yes, sir."

The Court: "And you sped up when you got to the light there at — Earl Garrett. You sped up. I could see you accelerating. I mean, looked like you were. Why were you accelerating?"

The Witness, "I don't know."

## STANDARD OF REVIEW

"To conduct a traffic stop in compliance with the Fourth Amendment, an officer must have 'reasonable suspicion.'" *Hamal v. State*, No. PD-1791-11, 2012 WL 3965358, at \*2 (Tex. Crim. App. Sept. 12, 2012). "Reasonable suspicion exists when an officer is aware of specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Id* (internal citations omitted). "Whether the facts known to [an] officer amount to reasonable suspicion is a mixed question of law and fact subject to *de novo* review." *Id*.

"The reasonable suspicion standard is wholly objective; the subjective intent of the officer conducting the investigation is irrelevant." *Id*. "The standard requires only some minimal level of objective justification for the stop." *Id*. (internal citations omitted). "[P]olice may validly stop a vehicle for a traffic violation so long as the stop would be objectively reasonable, regardless of whether the stop is a mere pretext to investigate unrelated criminal conduct." *Overshown v. State*, 329 S.W.3d 201, 205 (Tex. App.—Houston [14th Dist.] 2010, no pet.). In rejecting the pretext arrest doctrine, the Texas Court of Criminal Appeals concluded:

> It makes little sense to maintain the pretext arrest doctrine solely to deter the subjectively bad intentions of law enforcement personnel when these intentions do not ultimately manifest themselves in any objectively ascertainable Fourth Amendment violations. Thus, as long as the facts and circumstances show

> a valid and legal detention, it serves no actual Fourth Amendment function to attempt to unearth the subjective reasons for such detention.

*Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). "'[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" *Id.* at 941 n.5 (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)).

Finally, to prove reasonable suspicion, the State is not required to establish that the defendant actually committed a traffic violation, but only that the officer reasonably believed a violation occurred. *Butler v. State*, 300 S.W.3d 474, 480 (Tex. App.—Texarkana 2009, pet. ref'd). In evaluating the officer's reasonable belief, an objective standard is used: would the facts available to a reasonable officer at the moment of the stop justify an officer of reasonable caution in the belief that a traffic stop was appropriate. *Id.*

## DISCUSSION

From the trial court's express findings and conclusions, it appears that the trial court erroneously focused on a subjective standard by evaluating whether Officer Galvan developed an ulterior motive to stop Ellis when she was a few blocks away. It also appears the trial court applied a subjective standard in evaluating whether reasonable suspicion existed to justify the stop by emphasizing Officer Galvan's inability to describe the details of a particular ordinance. In fact, the trial court expressly concluded, "[Officer Galvan's] reasonable suspicion to stop the defendant is what counts."

Section 545.104 of the Texas Transportation Code provides, "An operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position." TEX. TRANSP. CODE ANN. § 545.104(a) (West 2011). The trial court's

- 6 -

findings state that Ellis moved his car to the right from its position in the left turn lane and turned right at the intersection. Although the trial court did not expressly make a finding with regard to Ellis's use of a signal, any implied finding that a signal was used would not be supported by the record taking into account the video. *See Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012) ("in order to determine whether the evidence supports the trial court's implicit finding, the court of appeals must take all of the evidence, including the video, into account").

In his arguments to the trial court, defense counsel stated that a signal was not required if a lane change or turn could be made safely. We disagree with this position. As the Tyler court has reasoned:

> Texas law prohibits a driver from turning a vehicle from a direct course or moving to the right or left on a roadway unless the movement can be made safely. *See id*. § 545.103 (Vernon 1999). However, we have found no authority suggesting that that a signal is unnecessary where the lane change can be made safely. *See Krug v. State*, 86 S.W.3d 764, 767 (Tex. App.—El Paso 2002, pet. ref'd) (driver has duty to signal intention to turn and must also make turn safely; sections 545.103 and 545.104 are not mutually exclusive). Moreover, we must presume that the entire statute is intended to be effective. *See* TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 2005). Because only those lane changes that can be made safely are permitted, any construction limiting the signal requirement to unsafe lane changes renders the pertinent portion of section 545.104(a) a nullity. We cannot adopt such a construction. *See* TEX. GOV'T CODE ANN. § 311.021(2).

*Coleman v. State*, 188 S.W.3d 708, 717 (Tex. App.—Tyler 2005, pet. ref'd); *see also Mahaffey v. State*, 316 S.W.3d 633, 643 n.51 (quoting this holding in *Coleman*).

Because the objective facts known to Officer Galvan established that Ellis failed to signal a lane change and turn, Officer Galvan had reasonable suspicion to stop Ellis for a traffic violation. *See Hamal*, 2012 WL 3965358, at *2. Accordingly, the trial court erred in granting Ellis's motion to suppress.

## CONCLUSION

Because we hold the trial court erred in granting Ellis's motion to suppress, we reverse the trial court's order and remand the cause to the trial court for further proceedings.

Catherine Stone, Chief Justice

DO NOT PUBLISH