**Opinion filed September 30, 2019**



# In The

# Eleventh Court of Appeals

_____

## No. 11-17-00259-CR

_____

## MICHAEL JOHN ZARATE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR23534**

## M E M O R A N D U M   O P I N I O N

The jury convicted Michael John Zarate of murder and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for life.[1]  *See* TEX. PENAL CODE ANN. § 19.02 (West 2019). Appellant brings four issues on appeal.  He contends that the trial court abused its discretion when it (1) denied his requested jury instruction on self-defense,

---

[1]In the same trial, the jury also convicted Appellant of the offense of tampering with evidence. Appellant's appeal of his conviction for tampering with evidence is the subject of Cause No. 11-17-00260-CR.

(2) admitted evidence of extraneous misconduct, and (3) denied his requested jury instruction on sudden passion. Appellant also contends that he received ineffective assistance of counsel. We affirm.

*Background Facts*

On November 2, 2014, Appellant and his girlfriend, Crystal McConnell, arrived at their home at the same time as their neighbor, Ernesto Gonzales, Jr. When Appellant and McConnell exited their vehicle, Gonzales said to Appellant, "Come on, Chester."[2] Gonzales also said that he had a skirt inside for Appellant and that he was "gonna f--k [Appellant] in the a-s." Appellant responded, "Step on my porch and I'll show you, little b---h." This exchange continued for at least two to three minutes until McConnell convinced Appellant to go inside the house.

Appellant went inside for two to three minutes and stared at Gonzales through Appellant's bedroom window. Then, Appellant went outside with a gun and went "after" Gonzales, who was standing in the gravel between their yards. When Gonzales saw Appellant, Gonzales ran away from Appellant. McConnell began screaming, "Michael John, stop; Michael John, stop." When Gonzales ran to his front yard, Appellant shot him, but Gonzales kept running. Appellant quickly followed with his gun raised. Gonzales ran into an alley, and a witness, Arnold Mendoza, heard more shots. Gonzales's neighbor, Gary Holland, found Gonzales lying in the alley. Before he died, Gonzales asked Holland for help. Gonzales was shot in the left arm, and the bullet passed through his arm and into his chest, causing injuries to his lungs and heart. Appellant got into McConnell's car and left the scene with McConnell.

---

[2]McConnell testified that she took the word "Chester" to mean "child molester."

*Alleged Jury Charge Errors*

In his first issue, Appellant contends that the trial court abused its discretion when it denied his requested jury instruction on self-defense at the conclusion of the guilt/innocence phase. Appellant asserts that he was entitled to this instruction because of his contentious relationship with Gonzales, the extreme wording and threats used by Gonzales, and Appellant's emotional state. We disagree.

The State presented evidence at trial that Gonzales and Appellant did not get along well: they frequently argued and had a physical altercation in the past. A few weeks before the shooting, Appellant walked to Gonzales's house; they fought; and Appellant bit off part of Gonzales's ear.

In our review of an alleged jury charge error, we first determine whether error occurred; if no error occurred, our analysis ends. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id.*; *see Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). As here, where a timely objection was lodged at trial, Appellant is entitled to a reversal if the error resulted in "some harm." *Elizondo v. State*, 487 S.W.3d 185, 204 (Tex. Crim. App. 2016).

We review a trial court's decision not to submit an instruction in the jury charge for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 121–22 (Tex. Crim. App. 2000). A trial court must charge the jury fully and affirmatively on the law applicable to every issue raised by the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The trial court must give a requested instruction on "every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks that the testimony is not worthy of belief." *Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007). If there is some evidence on each element of the defense

that, if believed by the jury, would support a rational inference that each element is true, then the defense has been raised. *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). As far as self-defense is concerned, "if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue." *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).

Section 9.31 of the Texas Penal Code authorizes the use of force in self-defense "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." PENAL § 9.31(a). The complainant's overt acts or words must show that the accused reasonably believed he was in danger. *Preston v. State*, 756 S.W.2d 22, 25 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). To lawfully use deadly force in self-defense, the defendant must be justified in the use of force under Section 9.31 and must also reasonably believe that his action is immediately necessary to protect himself from the other's use or attempted use of deadly force. PENAL § 9.32(a). "Deadly force" is "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3).

The evidence shows that Gonzales made verbal threats to Appellant. However, verbal provocation alone does not justify the use of force against another. *Id.* § 9.31(b)(1); *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). Additionally, there is no evidence that Gonzales used or attempted to use any kind of force, deadly or otherwise, when Appellant shot and killed him. Instead, Appellant was able to go inside his house after their verbal argument, and Gonzales ran away from Appellant when Appellant returned with a gun. There is nothing in the record to support the contention that Appellant reasonably believed the immediate use of deadly force was necessary to protect himself against Gonzales.

*See McBride v. State*, 359 S.W.3d 683, 694–95 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (self-defense instruction not warranted when defendant retreated from a disturbance, obtained a gun, and reappeared to escalate the disturbance at a time when he was under no threat of violence). While Appellant had a previous physical altercation with Gonzales, this prior confrontation could not have reasonably caused Appellant to believe that deadly force was immediately necessary to protect himself against Gonzales. *See Smith v. State*, 638 S.W.2d 208, 210 (Tex. App.—Fort Worth 1982, no pet.). Thus, the trial court properly denied Appellant's request for an instruction on self-defense. We overrule Appellant's first issue.

In his fourth issue, Appellant contends that the trial court abused its discretion when it denied his requested jury instruction on sudden passion at the end of the punishment phase. Appellant asserts that he was entitled to this instruction for the same reasons that he was entitled to an instruction on self-defense. Specifically, he directs our attention to evidence of "the persistent tension, arguments[,] and fights between the Appellant and Gonzales" as testified to by friends and neighbors. Appellant also contends that Gonzales's comments toward Appellant prior to the shooting were highly inflammatory and would have produced passion in any person.

> To justify a jury instruction on the issue of sudden passion at the punishment phase, the record must at least minimally support an inference: (1) that the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment; (2) that his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper; (3) that he committed the murder before regaining his capacity for cool reflection; and (4) that a causal connection existed "between the provocation, passion, and homicide."

*Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013) (quoting *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005)). "It does not matter that the

evidence supporting the submission of a sudden passion instruction may be weak, impeached, contradicted, or unbelievable." *Id.* (citing *McKinney*, 179 S.W.3d at 569). If the evidence thus raises the issue from any source, during either phase of trial, then the defendant has satisfied his burden of production, and if the defendant requests the instruction, the trial court must submit the issue in the jury charge. *Wooten*, 400 S.W.3d at 605; *Trevino v. State*, 100 S.W.3d 232, 237 (Tex. Crim. App. 2003) (per curiam).

At the time the trial court denied Appellant's requested instruction on sudden passion, the trial court stated that it believed that the instruction was not warranted under *McKinney*. The court held in *McKinney* that an instruction on sudden passion is proper only when the sudden passion arose out of provocation by the deceased at the time of the offense and that passion that is solely the result of former provocation does not qualify. 179 S.W.3d at 570. Thus, the anger that Appellant may have had toward Gonzales arising from previous encounters between the two would not justify a sudden passion instruction. *See id.*

With respect to the encounter between Appellant and Gonzales in front of their houses on the day of the shooting, McConnell provided the evidence of the encounter. She testified that, after Gonzales made inflammatory comments to Appellant, Appellant told Gonzales: "Step on my porch and I'll show you, little b---h," while laughing and taunting Gonzales. McConnell testified that Appellant stood on their porch "[a]t least two or three minutes." Appellant eventually went inside their house in response to McConnell's urging him to do so. McConnell testified that Appellant then began staring at Gonzales through a bedroom window. McConnell estimated that another two to three minutes elapsed while Appellant was inside the house before Appellant retrieved the firearm and went back outside to shoot Gonzales.

Assuming that a jury could have found that Gonzales's remarks would commonly produce sudden passion in a person of ordinary temper, there must be

6

evidence that the provocation rendered Appellant incapable of cool reflection. *See Beltran v. State*, 472 S.W.3d 283, 295 (Tex. Crim. App. 2015). There is no evidence that Appellant was rendered incapable of cool reflection. To the contrary, approximately five minutes elapsed after Gonzales's provocation during which Appellant retreated inside his house staring at Gonzales through a bedroom window. Thus, there is no evidence that Appellant shot Gonzales as a spontaneous response to anger but, rather, shot Gonzales as a reflective and deliberate response. *See Walker v. State*, 557 S.W.3d 678, 688–89 (Tex. App.—Texarkana 2018, pet. ref'd) (citing *Fry v. State*, 915 S.W.2d 554, 558–59 (Tex. App.—Houston [14th Dist.] 1995, no pet.)). Accordingly, the trial court did not err when it denied Appellant's request for a sudden passion instruction. We overrule Appellant's fourth issue.

*Admission of Evidence*

In his second issue, Appellant contends that the trial court abused its discretion when it admitted evidence of extraneous misconduct. Tommy Dale Holland, Jr., who was a friend of Gonzales, testified that Appellant "pulled a gun on [Gonzales]" a week before the shooting. Appellant objected to the admission of this evidence on multiple grounds including Rule of Evidence 404(b). The trial court overruled Appellant's objection. After the State presented this evidence, the trial court provided a limiting instruction to the jury at the request of Appellant's trial counsel. Appellant asserts that a prior incident involving a firearm is character-conformity testimony prohibited by Rule 404(b) and is more prejudicial than probative. *See* TEX. R. EVID. 403, 404(b).

We review a trial court's ruling on admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). This standard of review applies to a trial court's decision to admit or exclude extraneous offense evidence. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We will uphold the trial court's decision unless it lies outside the zone of reasonable

disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We will uphold a trial court's evidentiary ruling on appeal if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 125–26 (Tex. Crim. App. 2006); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity with that conduct. TEX. R. EVID. 404(b)(1). This rule excludes evidence offered to prove bad character and conduct in conformity with that bad character. *De La Paz*, 279 S.W.3d at 343. Evidence of other crimes, wrongs, or acts may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or rebuttal of a defensive theory. TEX. R. EVID. 404(b)(2); *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); *Hernandez v. State*, 426 S.W.3d 820, 825 (Tex. App.—Eastland, 2014, pet. ref'd) (mem. op.).

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay or needless presentation of cumulative evidence. TEX. R. EVID. 403; *see Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). "Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). Evidence is unfairly prejudicial when it has the undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render*, 347 S.W.3d at 921.

In reviewing a trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991)). When conducting a Rule 403 analysis, the trial court must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). Rule 403, however, does not require that the balancing test be performed on the record. *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd). In overruling a Rule 403 objection, the trial court is assumed to have applied a Rule 403 balancing test and determined that the evidence was admissible. *Id.*

When the trial court announced its ruling admitting the evidence of the prior incident involving a firearm, it stated that the evidence was admissible because it concerned the relationship between Appellant and Gonzales. The trial court also stated that the probative value of the evidence did not outweigh its prejudicial nature. Although the trial court did not expressly reference Article 38.36 of the Code of Criminal Procedure, the State cites this provision as a basis for upholding the trial court's admission of the evidence. *See* Crim. Proc. art. 38.36 (West 2018). This provision states:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between

> the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

*Id.* In some situations, prior acts of violence between the victim and the accused may be offered to illustrate the nature of the relationship. *Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006). "These specific acts of violence must meet the requirements of the Rules of Evidence in order to be admissible." *Id.* "[I]n cases in which the prior relationship between the victim and the accused is a material issue, illustrating the nature of the relationship may be the purpose for which evidence of prior bad acts will be admissible." *Id.* at 703.

As reflected by our discussion of the previous two issues, the relationship between Appellant and Gonzales was a material issue at trial. The evidence of Appellant pulling a firearm on Gonzales during a previous encounter was admissible under Rule 404(b) to show the nature of their relationship. *See id.* at 704; see also TEX. R. EVID. 404(b). The evidence was not offered for the sole purpose of showing that Appellant had a violent character or that he acted in conformity with it in shooting Gonzales. Furthermore, its probative value was not substantially outweighed by the danger of unfair prejudice given the fact that the nature of the relationship between the two men was a material issue at trial. Accordingly, the trial court did not abuse its discretion by admitting the challenged evidence. We overrule Appellant's second issue.

*Ineffective Assistance of Counsel*

In his third issue, Appellant contends that he received ineffective assistance of counsel at trial. In the span of two and one-half pages in his brief, Appellant generally alleges six matters for which he contends his trial counsel was ineffective. He asserts that trial counsel was deficient for not making an opening statement, failing to contest Appellant's guilt during closing argument, calling only one witness

whose testimony did not focus on the murder, cross-examining only a few witnesses, helping the State introduce harmful evidence, and drawing the jury's attention to other harmful evidence. In response, the State devoted twenty-four pages of its brief to address the manner in which trial counsel represented Appellant at trial.

To establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action could be considered sound trial strategy. *Id.* at 689.

A claim of ineffective assistance of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Direct appeal is usually an inadequate vehicle to raise such a claim because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Direct appeal is especially inadequate when counsel's strategy does not appear in the record. *Id.* Trial counsel should ordinarily have an opportunity to explain his actions before an appellate court denounces counsel's actions as ineffective. *Id.* Without this opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim App. 2001)).

11

We first note that Appellant did not file a motion for new trial. Accordingly, trial counsel has not had an opportunity to explain his trial strategy in response to the matters that Appellant contends were deficient. The matters that Appellant contends were deficient are inherently matters that concern trial strategy. For example, the decision to give an opening statement is "entirely discretionary" and "imbued with strategic implications." *Calderon v. State*, 950 S.W.2d 121, 127 (Tex. App.—El Paso 1997, no pet.); *see Darkins v. State*, 430 S.W.3d 559, 570 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). In fact, the trial court noted that the absence of an opening statement from Appellant restricted the State's use of evidence at trial. Furthermore, "[c]losing argument is an area where trial strategy is most evident." *Habib v. State*, 431 S.W.3d 737, 742 (Tex. App.—Amarillo 2014, pet. ref'd) (citing *Flemming v. State*, 949 S.W.2d 876, 881 (Tex. App.—Houston [14th Dist.] 1997, no pet.)).

Appellant also contends that trial counsel was ineffective because trial counsel called only one witness whose testimony did not focus on the murder. The failure to call witnesses does not constitute ineffective assistance without a showing that the witnesses were available to testify and that their testimony would have benefited Appellant. *Rodriguez v. State*, 459 S.W.3d 184, 199 (Tex. App.—Amarillo 2015, pet. ref'd). Appellant has not shown which additional witnesses trial counsel could have called, whether those witnesses were available to testify, and what their purported testimony would have been or how it would have benefited Appellant. Thus, we have nothing to review. *See id.* Accordingly, Appellant has failed to demonstrate that trial counsel was ineffective on this basis.

Additionally, Appellant contends that his trial counsel failed to effectively cross-examine the State's witnesses. In order to show that his trial counsel was ineffective on this basis, Appellant must show what questions should have been asked and what the answers would have been. *See Davis v. State*, 119 S.W.3d 359,

370 (Tex. App.—Waco 2003, pet. ref'd). Appellant has not addressed in his brief which witnesses trial counsel should have cross-examined, what questions trial counsel should have asked, and what those witnesses would have testified to had they been asked those questions. Further, the record contains no explanation for why Appellant's trial counsel limited his cross-examination to the questions asked. Therefore, Appellant has failed to demonstrate that trial counsel was ineffective on this basis.

Given the strength of the evidence in this case of Appellant's role in shooting Gonzales, it is plausible that trial counsel concluded the best strategy might be to appear open and honest in hopes of mitigating punishment. *See Flemming*, 949 S.W.2d at 881. In light of these circumstances, an attempt to mitigate punishment could have been a very realistic trial strategy. *See id*. Trial counsel's performance was not so outrageous that no competent attorney would have engaged in it. *See Goodspeed*, 187 S.W.3d at 392. In the absence of an explanation from trial counsel of his trial strategy, we cannot conclude that his performance was deficient. *See id*. We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

September 30, 2019                                                  CHIEF JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.;
Stretcher, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.